Frank **STOFFELS**, et al, on behalf of the SBC Telephone Concession Plan and all other persons similarly situated, Plaintiffs,

v.

**SBC COMMUNICATIONS, INC.,** and the SBC Telephone Concession Plan, Defendants.

Civ. No. SA–05–CA–0233–XR.

United States District Court,
W.D. Texas,
San Antonio Division.

Nov. 12, 2009.

Marc I. Machiz, Cohen Milstein Sellers & Toll, Pllc, Philadelphia, PA, Matthew B. Kaplan, Michelle C. Yau, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Robert Joseph Barton, Cohen Milstein Sellers & Toll Pllc, Washington, DC, David Weiser, Jeremy D. Wright, Kator, Parks & Weiser, P.L.L.C., Max Renea Hicks, Law Office of Max Renea Hicks, Austin, TX, for Plaintiffs.

John L. Carter, Logan E. Johnson, Miriam M. Burke, Stacey Neumann Vu, Vinson &

Elkins L.L.P., Austin, TX, Patrick W. Shea, Paul Hastings Janofsky & Walker LLP, New York, NY, Geoffrey Amsel, Javier Aguilar, AT & T Legal Department, Dallas, TX, for Defendants.

## ORDER

JOHN W. PRIMOMO, United States Magistrate Judge.

Before the Court is plaintiffs' Motion to Compel Defendant SBC Communications, Inc. ("SBC") to Produce Records included on Defendant's Privilege Log. (Docket nos. 388 and 400). Defendant, AT & T, formerly known as SBC Communications, Inc., has responded.[1] (Docket no. 397). This Court previously ordered defendants to produce the following documents from its privilege log to the Court for an *in camera* inspection: 149, 163, 168–69, 177–80, 184–208, 237, 239–40, 242, 358–59, 448–49, 1042–46, 1065, 1069, 1085, 1101, 1170–71, 1307, 1371, 1382–85, 1929, 1933–35, 1939–41, and 1945–50.[2] (Docket no. 405). Upon consideration of the motion, the documents, response, and applicable law, the Court concludes that plaintiffs' motion to compel should be **DENIED IN PART** and **GRANTED IN PART**.

## BACKGROUND

In March of 2005, plaintiffs filed this certified class action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., against SBC, alleging that (1) the "Out-of Region Concession" benefit which consisted of cash payments to certain employees after retirement constitutes a defined benefit pension plan under ERISA, and (2) SBC violated ERISA regarding this benefit, in part, by modifying, eliminating and/or reducing the benefit beginning in January 2003. **Docket no. 1**, Compl. ¶¶ 2–3, 44–111. The case was bifurcated and at the conclusion of Phase I of this litigation, the Court found that the SBC Telephone Concession Plan was an ERISA pension plan maintained by SBC Communications, Inc. and as a result, that AT & T was

the plan sponsor and administrator under ERISA. *Stoffels v. SBC Commc'ns, Inc.*, 555 F.Supp.2d 745, 761–62 (W.D.Tex.2008). The plaintiffs then sought, with respect to Phase II of this litigation, to have defendants revise the descriptions on their privilege log that identified documents defendants claimed were protected from disclosure by the attorney-client privilege and/or attorney work product protection. Notwithstanding defendants' revisions, plaintiffs maintained the descriptions remained generic and nearly identical, and as a result, plaintiffs were unable to assess defendants' claims that the information was privileged or subject to protection as trial-preparation material. Plaintiffs then filed a motion to compel seeking an *in camera* inspection of the documents in question. (Docket no. 388). This Court agreed to inspect the documents *in camera* for the purpose of ascertaining defendants' entitlement to the privileges and protection claimed. (Docket no. 405).

## APPLICABLE LAW

### A. Attorney–Client Privilege

The underlying purpose of the attorney-client privilege is to " 'encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.' " *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). This purpose enables clients to make full disclosure to their attorneys to obtain "the aid of persons having knowledge of the law and [who are] skilled in its practice." *Hunt v. Blackburn,* 128 U.S. 464, 470, 9 S.Ct. 125, 32 L.Ed. 488 (1888). However, because the assertion of privileges inhibits the search for truth, the attorney-client privilege is generally construed narrowly by courts. *Trammel v. United States,* 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980); *Navigant Consulting, Inc. v. Wilkinson,* 220 F.R.D. 467, 473 (N.D.Tex.2004).

---

1. The Court refers to both AT & T and SBC in its references to "defendants."

2. Subsequently, the defendants produced documents nos. 1043–46, 1065, 1069, 1307, and 1947–49 in redacted form.

■ Under federal law, the elements of the attorney-client privilege are "(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." *In re Grand Jury Proceedings*, 517 F.2d 666, 670 (5th Cir.1975). Based upon these considerations, it is clear the privilege "only protects disclosure of confidential communications between the client and attorney; it does not protect the disclosure of underlying facts." *Upjohn, Co.*, 449 U.S. at 395–396, 101 S.Ct. 677. Thus, pre-existing facts that underlie the client's confidential communications are not privileged simply because the client disclosed them to an attorney for the purpose of obtaining legal services. *See id.* This inquiry is highly fact-specific, and the party asserting the privilege bears the burden of proving its applicability. *United States v. Kelly*, 569 F.2d 928, 938 (5th Cir.1978).

■ The attorney-client privilege applies in a corporate setting. However, because in-house counsel has an increased level of participation in the day-to-day operations of the corporation, it is more difficult to define the scope of the privilege when a communication is made to in-house counsel. *See Upjohn Co.*, 449 U.S. at 389, 101 S.Ct. 677. Thus, in such a setting, the attorney-client privilege attaches only to communications made for the purpose of giving or obtaining legal advice or services, not business or technical advice or management decisions. *See Navigant Consulting, Inc.*, 220 F.R.D. at 474; *Borase v. M/A COM, Inc.*, 171 F.R.D. 10, 14 (D.Mass.1997); *First Wisconsin Mortgage Trust v. First Wisconsin Corp.*, 86 F.R.D. 160, 174 (D.C.Wis.1980). The critical inquiry is, therefore, whether any particular communication facilitated the rendition of predomi-nantly legal advice or services to the client. *See Navigant Consulting, Inc.*, 220 F.R.D. at 474; *see also Neuder v. Battelle Pac. Nw. Nat'l Lab.*, 194 F.R.D. 289, 293 (D.D.C.2000); *Boca Investerings P'ship v. United States*, 31 F.Supp.2d 9, 11–13 (D.D.C.1998).

■ An exception to the attorney-client privilege has been recognized for communications relating to fiduciary duties of an ERISA plan administrator. *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 645 (5th Cir.1992). Because "[a]n ERISA plan is a separate legal entity from its sponsor, 29 U.S.C. § 1132(d), and a plan's administrator owes a fiduciary duty to the plan's beneficiaries, not its sponsor," "[w]hen an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator." *Id.* (citing *Washington–Baltimore Newspaper Guild, Local 35 v. Washington Star Co.*, 543 F.Supp. 906, 909 (D.D.C.1982)). "Therefore, an ERISA fiduciary cannot assert the attorney-client privilege against a plan beneficiary about legal advice dealing with plan administration." *Wildbur*, 974 F.2d at 645. However, "[p]lan sponsors who alter the terms of a plan do not fall into the category of fiduciaries," and " '[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.' " *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996)(internal quotes omitted)). "When employers undertake those actions, they do not act as fiduciaries, but are analogous to the settlors of a trust." *Id.*

### B. Attorney Work Product Protection

■ Federal Rule of Civil Procedure 26(b)(3) governs protection of attorney work product. Under this Rule, a party may obtain "documents and other tangible things" prepared in anticipation of litigation or trial. FED.R.CIV.P. 26(B)(3). Because this Rule applies only to matter "otherwise discoverable under subdivision (b)(1)", if the disputed mat-

ter is privileged, analysis need not go any further. Therefore, analysis whether a communication falls within the attorney-client privilege should precede any inquiry into whether the work product protection applies. *See Upjohn,* 449 U.S. at 397, 101 S.Ct. 677.

▮ The work product protection is broader in scope and reach than is the attorney-client privilege because the privilege extends only to client communications, while the work product protection encompasses much that has its source outside client communications. *United States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). Further, Rule 26(b)(3) permits disclosure of documents and tangible things constituting attorney work product only upon a showing of substantial need and inability to obtain the equivalent without undue hardship. FED.R.CIV.P. 26(B)(3). The focus of determination whether a document falls within the work product protection is whether "the motivating purpose" behind its creation was to aid in litigation or possible future litigation. *See In re Universal Serv. Fund Tel. Billing Practices Litig.,* 232 F.R.D. 669, 676 (D.Kan.2005); *Raytheon Aircraft Co. v. U.S. Army Corps. of Eng'rs,* 183 F.Supp.2d 1280, 1288 (D.Kan.2001).

▮ Rule 26 provides, however, that "[i]n ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation." FED.R.CIV.P. 26(b)(3); *Upjohn Co.,* 449 U.S. at 400, 101 S.Ct. 677. Unlike the attorney-client privilege, work product protections are held by the attorney as well as the client, either of whom may assert it. *In re Grand Jury Subpoenas,* 561 F.3d 408, 411 (5th Cir.2009). As a result, "a waiver by the client of the work product privilege will not deprive the attorney of his own work product privilege, and vice versa." *In re Grand Jury Proceedings,* 43 F.3d 966, 972 (5th Cir.1994). "Because the attorney work product doctrine fosters interests different from the attorney-client privilege, it may be successfully invoked against a pension plan beneficiary even though the attorney-client privilege is unavailable." *Wildbur,* 974 F.2d at 646.

## DISCUSSION

In the present case, defendants assert that the following documents are protected from disclosure by the attorney-client privilege and/or the attorney work product protection: 149, 163, 168–69, 177–80, 184–208, 237, 239–40, 242, 358–59, 448–49, 1042–46, 1065, 1069, 1085, 1101, 1170–71, 1307, 1371, 1382–85, 1929, 1933–35, 1939–41, and 1945–50. Defendants submitted two privilege logs, one dated March 7, 2007, and a second one dated July 8, 2009. In defendants' March 2007 log, defendants asserted only the attorney-client privilege with respect to the following documents: 149, 163, 168, 179, 207–08, 358–59, 1371, 1382–85, 1933 and 1939–41; defendants asserted both the attorney-client privilege and the attorney work product protection with respect to the remaining documents. Two years later, defendants revised their privilege log and, in addition to revising the description of the documents withheld and reasserting the attorney-client privilege, newly asserted attorney work product protection with respect to the following documents: 149, 163, 168, 179, 207–08, 358–59, 1371, and 1933. To the extent defendants failed to expressly assert the claim of attorney work product protection for these documents until two years after defendants initially withheld this information, defendants have waived this claim. *See* FED.R.CIV.P. 26(b)(5)(A) (requiring that when a party withholds information by claiming the information is privileged or subject to protection, the party must expressly make the claim).

The Court first considers whether defendants have established an entitlement to the attorney-client privilege, and if so, whether the fiduciary exception, noted above, applies as to these documents. *See Upjohn,* 449 U.S. at 397, 101 S.Ct. 677. If the Court determines that the attorney-client privilege does not apply or that the fiduciary exception precludes assertion of the attorney-client privilege, the Court will then consider defendants' entitlement to the attorney work product protection only insofar as defendants have timely asserted this claim. In its submission of documents for *in camera* review, defendants grouped the documents into nineteen separate categories and addressed their

arguments accordingly. For convenience, the Court adopts the same method of categorizing the documents employed by defendants with one minor exception.[3]

### 1. DOCUMENTS NOS. 1371, 1382, 1383, 1384 AND 1385 DESCRIBED IN DEFENDANTS' PRIVILEGE LOG AS COMMUNICATIONS REQUESTING LEGAL ADVICE REGARDING TELEPHONE CONCESSIONS

■■ Document no. 1371 consists of emails dated February and March of 2003, and is identified as "communications containing request for information from legal counsel regarding legal issues surrounding telephone concessions." The initial email from Mr. Barber, an attorney, to Beatrice Huber, a client representative, advises her that he, along with other attorneys have continued to receive a "concession" on their paychecks despite the fact that they are now eligible for SBC@Home, and asking whether this overpayment is going to be corrected. Related emails regarding this issue are also attached.

Defendants withheld this document based solely on a claim of attorney-client privilege; however, it does not appear to meet the elements for attorney-client privilege in that Mr. Barber was not acting in his capacity as a lawyer in making this communication, and further, the communication does not appear to relate to a fact of which Mr. Barber was informed by his client for the purpose of securing primarily either an opinion on law, legal services, or assistance in some legal proceeding. *In re Grand Jury Proceedings*, 517 F.2d at 670. Instead, the communication amounts to business or management decisions to which the attorney-client privilege does not attach. *Navigant Consulting, Inc.*, 220 F.R.D. at 474.

■■ Further, document nos. 1382, 1383, 1384 and 1385 have been identified in defendants' privilege log as emails from Daniel Ramirez and Patrick Dennis to Dennis, Amsel, Medina, Melvin–Neloms, and others, consisting of communications containing or providing information at the request of legal counsel regarding legal issues surrounding

the telephone concessions litigation. Defendants objected to producing these documents based solely on the attorney-client privilege and now contend that these documents reflect SBC's "explor[ation] of persons who were receiving the wrong concession or inappropriately received concession" apparently in response to document no. 1371, since defendants combine these documents in the same category. However, as previously noted, Mr. Barber's email does not qualify as an attorney-client communication subject to the privilege. In fact, Mr. Barber states in his email that he is aware that he and others are being overpaid and asks Ms. Huber if she can find out what the plan is. Defendants' contention, therefore, that these documents, which appear to be charts identifying recipients of telephone concessions, constitute communications providing information at the "request" of legal counsel is disingenuous given that Mr. Barber does not request the information at issue and further, was not acting in his capacity as an attorney in making the communication. Moreover, there is no evidence that these "communications," which are undated and do not identify either the author or the recipients, were made to an attorney or his subordinate who in connection with this communication was acting as a lawyer; and the communications related to a fact of which the attorney was informed by his client without the presence of strangers *"for the purpose of securing primarily either an opinion on law, legal services, or assistance in some legal proceeding."* *In re Grand Jury Proceedings*, 517 F.2d at 670 (emphasis added). According, plaintiffs' motion to compel is **GRANTED** as to document nos. 1371, 1382, 1383, 1384 and 1385.

### 2. DOCUMENTS NOS. 149, 1929 AND 1941 DESCRIBED IN DEFENDANTS' PRIVILEGE LOG AS COMMUNICATIONS CONTAINING/DISCUSSING ADVICE OF LEGAL COUNSEL REGARDING TELEPHONE CONCESSIONS

Document no. 149 is an email, dated March of 2004, that originated from Ms. Melvin–Neloms and was sent to Frank Magill,

---

**3.** Defendants list nineteen separate categories of documents but inadvertently repeat no. 13 twice, concluding with no. 18. Rather than renumber categories 14 through 19, the Court has re-designated the second category listed by defendants as "13" to now read "13a".

an attorney for AT & T. It is clearly a request for legal advice, and meets the requirements for an attorney-client communication subject to the privilege. The issue, therefore, is whether the fiduciary exception to this privilege applies, thereby precluding assertion of the privilege against a plan beneficiary regarding legal advice dealing with plan administration. *Wildbur,* 974 F.2d at 645. A review of the document reflects that it specifically relates to adopting, modifying, or terminating the plan. *Hughes Aircraft Co.,* 525 U.S. at 443, 119 S.Ct. 755. "Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries," and "are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.'" *Hughes Aircraft Co.,* 525 U.S. at 443, 119 S.Ct. 755 (citing *Spink,* 517 U.S. at 890, 116 S.Ct. 1783).

Nevertheless, plaintiffs contend that discussions pertaining to whether and how to *implement* a plan amendment or termination are also fiduciary duties. The Court is not persuaded by plaintiffs' arguments in light of more recent Fifth Circuit law. *See Martinez v. Schlumberger, Ltd.,* 338 F.3d 407, 430 (5th Cir.2003)(reasoning that ERISA, "which includes broad disclosure duties on the part of an employer-administrator, omits mention of any duty on the part of an employer-administrator to disclose that *it is considering* amending the plan")(emphasis added)(citing *Spink,* 517 U.S. at 890, 116 S.Ct. 1783). Therefore, it appears that the fiduciary exception does not apply and the attorney-client privilege attaches as to document no. 149.

Similarly, document no. 1929 is an email dated April 2004, that originated from Ms. Huber and was also sent to Frank Magill. It is a request for legal advice and clearly falls within the ambit of the protection afforded by the attorney-client privilege. *In re Grand Jury Proceedings,* 517 F.2d at 670. A review of this document likewise reflects that this email specifically relates to adopting, modifying, or terminating the plan; therefore, the fiduciary exception is inapplicable. *Hughes Aircraft Co.,* 525 U.S. at 443, 119 S.Ct. 755.

■ Document no. 1941 consists of five pages of emails that appear to have originated in early April 2004 with an email from Brenda Clark to Jasmin Kachalia and Kent Anderson, none of whom are identified as attorneys. Other than one reference to "asking legal to provide us with their decision," the emails do not make any reference to legal advice or confidential communications. Subsequent emails to and/or from Frank Magill and Anne Libbin clearly are directed to an attorney and request legal advice. Nevertheless, defendants argue that "[t]his series of legal questions and advice about the possible termination of the plan is clearly attorney-client privilege and reflects core attorney work product for which no fiduciary exception applies." However, in their 2007 log, the defendants asserted solely the attorney-client privilege as to document no. 1941; accordingly, any assertion of the attorney work product protection is without merit. *See* Fed.R.Civ.P. 26(b)(5)(A).

The emails between client representatives are not privileged in this instance as the privilege "only protects disclosure of confidential communications between the client and attorney and does not protect the disclosure of underlying facts." *See Upjohn,* 449 U.S. at 395–396, 101 S.Ct. 677. The background facts in these emails do not reveal any confidential communication with an attorney which would protect them from discovery. However, the emails to and from legal counsel clearly contain communications that are subject to the attorney-client privilege. Further, as these emails relate to terminating OOR concessions, they are not otherwise subject to the fiduciary exception. *Hughes,* 525 U.S. at 443–44, 119 S.Ct. 755. Accordingly, plaintiffs' motion to compel is **GRANTED IN PART** and **DENIED IN PART;** all emails to and from legal counsel are subject to the attorney-client privilege while the remaining emails should be produced.

3. **DOCUMENTS NOS.1933, 1939 AND 1940 DESCRIBED IN DEFENDANTS' PRIVILEGE LOG AS COMMUNICATIONS CONTAINING LEGAL ADVICE AND REQUESTING INFORMATION FOR DOCUMENTS FROM OUTSIDE COUNSEL RELATING TO TELEPHONE CONCESSIONS**

Document no. 1933 consists of an email from Gwen Melvin–Neloms to Frank Magill

dated May 2004, regarding a request for documents for the purpose of securing advice from outside counsel. Document nos.1939 and 1940 also reflect emails between Frank Magill and Ms. Huber regarding information requested by outside legal counsel. In its 2007 log, the defendants asserted solely the attorney-client privilege as to these documents. As it appears the documents pertain to communications between an attorney and client representatives for the purpose of facilitating legal advice, the documents are subject to the attorney-client privilege. *See Clover Staffing, LLC v. Johnson Controls World Servs., Inc.*, 238 F.R.D. 576, 581–82 (S.D.Tex. 2006). Further, the documents relate to discussions regarding terminating OOR concessions; therefore, the fiduciary exception does not apply. *Hughes*, 525 U.S. at 443–44, 119 S.Ct. 755. Accordingly, plaintiffs' motion to compel is **DENIED** as to document nos.1933, 1939 and 1940.

4. **DOCUMENTS NOS. 1042, 1934 AND 1935 DESCRIBED IN DEFENDANTS' PRIVILEGE LOG AS COMMUNICATIONS CONTAINING LEGAL ADVICE REGARDING TELEPHONE CONCESSIONS LITIGATION**

Document nos. 1042, 1934 and 1935 are emails from legal counsel marked "privileged & confidential-attorney-client communication/attorney work product." The documents clearly reflect communications between attorney/client and pertain to discontinuing concessions; therefore, the documents are subject to the attorney-client privilege and do not fall within the fiduciary exception. *Hughes Aircraft Co.*, 525 U.S. at 443, 119 S.Ct. 755. Accordingly, plaintiffs' motion to compel document nos. 1042, 1934 and 1935 is **DENIED.**

5. **DOCUMENTS NOS. 163, 168, 177 AND 1085 DESCRIBED IN DEFENDANTS' PRIVILEGE LOG AS COMMUNICATIONS CONCERNING LEGAL ADVICE REGARDING TELEPHONE CONCESSIONS/LITIGATION**

In its 2007 log, the defendants asserted solely the attorney-client privilege as to documents nos. 163 and 168, but asserted both the attorney-client privilege and work product protection as to document nos. 177 and 1085. Document nos. 163 and 1085 are duplicates and originated from Kevin Fetick to Lawrence Ruziacka on August 24, 2004. The email relates outside counsel's legal advice to client representatives, as well as to legal counsel concerning termination of the OOR concession plan and is prefaced by the statement, "FYI. Received a call from Claude Sisson this morning regarding telephone concession. . . ." A copy of the email is sent to Harold Rainbolt, an attorney, who responds by rendering his legal opinion.

A review of the document establishes that it satisfies the 4–factor attorney-client inquiry. *In re Grand Jury Proceedings*, 517 F.2d at 670. Further, as the communication pertains to termination of the OOR concessions, it is not subject to the fiduciary exception. *Hughes Aircraft Co.*, 525 U.S. at 443, 119 S.Ct. 755.

Document no. 168 is an email, dated July 22, 2004, that originated from Frank Magill, in-house counsel for SBC, to Anne Libbin, Terry O'Loughlin, Christian Bourgeacq, Kathryn M. Kemp, David J. Vegliante, Glen Glass, Diego Pena, and Claude Sisson, who are all identified as legal counsel, and was forwarded to Norma Gonzalez, a client representative, by Diego Pena, legal counsel. The email relates legal advice regarding termination of OOR retiree concessions and is clearly subject to the attorney-client privilege. *In re Grand Jury Proceedings*, 517 F.2d at 670; *see also Hughes Aircraft Co.*, 525 U.S. at 443, 119 S.Ct. 755.

Document no. 177 originates with a copy of document no. 168, which is forwarded to other legal counsel, including Frank Magill, who then forwards the email to Norma Gonzalez, Executive Director of SBC's Human Resources Division. The email clearly contains privileged communications by a lawyer to a corporate agent and the fiduciary exception does not apply because of its subject matter. *Hughes*, 525 U.S. at 443–44, 119 S.Ct. 755. Accordingly, plaintiffs' motion to compel is **DENIED** as to document nos. 163, 168, 177 and 1085.

### 6. DOCUMENTS NOS. 178, 169, 179, 1043*, 1044*, 1045* AND 1307*[4] DESCRIBED IN DEFENDANTS' PRIVILEGE LOG AS COMMUNICATIONS REQUESTING/CONTAINING LEGAL ADVICE/ISSUES REGARDING TELEPHONE CONCESSIONS LITIGATION

In its 2007 log, the defendants asserted solely the attorney-client privilege as to documents nos. 179; however, the defendants asserted both the attorney-client privilege and work product protection as to document nos. 178, 169, 1043, 1044, 1045 and 1307.

Document no. 178 is an email from Norma Gonzalez to Frank Magill requesting legal advice pertaining to terminating OOR concessions. It clearly contains privileged communications between a lawyer and a corporate agent and further, given its subject matter, the fiduciary exception does not apply. *In re Grand Jury Proceedings*, 517 F.2d at 670; *see also Hughes*, 525 U.S. at 443–44, 119 S.Ct. 755.

Document no. 169 is a memo from Norma Gonzalez to Karen Jennings, Vice President of the Human Resources Division, dated July 27, 2004. Document nos. 1043 and 1044 consist of duplicates of this same document and were produced in redacted form to the plaintiffs. The redacted portion begins with a statement "[l]egal has informed us" and proceeds to relate legal advice pertaining to terminating the OOR concessions. Ms. Gonzalez states that she is providing this summary at Ms. Jennings' request.

While a communication that would otherwise be privileged loses its protection when it is relayed to a third party who does not share a common legal interest, in the present case, Ms. Jennings and Ms. Gonzalez clearly share the same interest. *See In re Auclair*, 961 F.2d 65, 69 (5th Cir.1992). Here, it is reasonable to assume that the communication was made in confidence such that disclosure to third parties was not intended. Therefore, the Court finds that redacted portion of this memo is subject to the attorney-client privilege. Further, as document no. 169 relates to the OOR termination, the fiduciary exception does not apply. *Hughes*, 525 U.S. at 443–44, 119 S.Ct. 755.

▪ Document no. 179 is an email from Norma Gonzalez to Karen Jennings, dated July 2004, referencing requests from legal. It does not, however, contain any legal opinions or otherwise reflect communications between attorney/client that would be privileged but merely sets out underlying facts that are not protected from disclosure. *See Upjohn*, 449 U.S. at 395–96, 101 S.Ct. 677. Accordingly, the Court finds that defendants have failed to satisfy the 4–factor attorney-client privilege inquiry and document no. 179 must be produced.

Document nos. 1045 and 1307 are duplicates and consist of a second memo from Norma Gonzalez to Karen Jennings dated July 2004, which was also produced in redacted form. The redacted portion consists of legal advice regarding terminating the OOR concessions. Like document no. 169, document nos. 1045 and 1307 appear to have been created by Ms. Gonzalez at Ms. Jennings' request. For reasons previously set forth in addressing document no. 169, the Court likewise finds that the redacted portions of document nos. 1045 and 1307 are subject to the attorney-client privilege. *See In re Auclair*, 961 F.2d at 69. Further, as document nos. 1045 and 1307 relate to the OOR termination, the fiduciary exception does not apply. *Hughes*, 525 U.S. at 443–44, 119 S.Ct. 755. Plaintiffs' motion to compel is **GRANTED** as to document no. 179 and **DENIED** as to document nos. 178, 169, 1043, 1044, 1045 and 1307.

### 7. DOCUMENT NO. 180 DESCRIBED IN DEFENDANTS' PRIVILEGE LOG AS COMMUNICATIONS CONTAINING LEGAL ADVICE REGARDING TELEPHONE CONCESSIONS LITIGATION

In its 2007 log, the defendants asserted both the attorney-client privilege and work product protection as to document no. 180, which contains a series of emails initially between Karen Jennings and Norma Gonzalez, dated June 14, 2004. While these emails pertain to issues relating to telephone concessions, they are not, for the most part, directed to legal counsel. Further, they consist of underlying facts that are not privi-

**4.** Documents marked with an asterisk were pro-    duced in redacted form.

leged simply because the client later disclosed them to an attorney for the purpose of obtaining legal services. *Upjohn, Co.,* 449 U.S. at 395–396, 101 S.Ct. 677. Thus, the fact that the emails were subsequently forwarded to Frank Magill on July 29, 2004, by Norma Gonzalez, who then requested legal advice, does not render the initial emails between Ms. Jennings' and Ms. Gonzalez the protection afforded by the attorney-client privilege. While the emails directed to and from Frank Magill requesting and/or discussing legal advice pertaining to terminating the OOR concessions are subject to the attorney-client privilege, the emails between Norma Gonzalez and other supervisory personnel are not.

Nevertheless, defendants also asserted the work product protection as to this document. FED.R.CIV.P. 26(b)(3). A party asserting work-product protection must establish the following elements: first, the materials must be documents or tangible things; second, the party's primary motivating purpose behind creating the document must have been anticipation of litigation and to aid in possible future litigation; third, the materials must have been prepared by or for a party's representative; and fourth, if the party asserts that material is opinion work-product, that party must show that the material contains mental impressions, conclusion, opinions or legal theories of an attorney or other representative of a party. *Enron Corp. Savs. Plan v. Hewitt Assoc., L.L.C.,* 258 F.R.D. 149, 161 (S.D.Tex.2009). Here, the emails in question appear to meet the 4–factor work product protection inquiry. Although the documents do not pertain to legal advice per se, they consist of emails created by a party's representative for the primary purpose of aiding in future litigation. *Id.* Accordingly, plaintiffs' motion to compel document no. 180 is **DENIED.**

8. **DOCUMENT NOS. 358, 359 AND 1065\* DESCRIBED IN DEFENDANTS' PRIVILEGE LOG AS COMMUNICATIONS REQUESTING/CONTAINING LEGAL ADVICE REGARDING TELEPHONE CONCESSIONS/ LITIGATION**

■ In its 2007 log, the defendants asserted solely the attorney-client privilege as to documents nos. 358 and 359; however, the defendants asserted both the attorney-client privilege and work product protection as to document no. 1065. Document no. 358 consists of two emails: one that originated from Jim Beck, Vice President of Human Resources, to Norma Gonzalez dated August 13, 2004, and a second email from Frank Magill to Norma Gonzalez dated August 16, 2004, regarding discussions with outside legal counsel. The email from Jim Beck consists of underlying facts that are not privileged simply because they were later disclosed to an attorney for the purpose of obtaining legal services. *Upjohn, Co.,* 449 U.S. at 395–396, 101 S.Ct. 677. Further, as the work product protection was not timely invoked, this claim has been waived as to Mr. Beck's email. *See* FED.R.CIV.P. 26(b)(5)(A).

The email from Frank Magill is subject to the attorney-client privilege; further, as it pertains to terminating and/or amending the plan, it is not subject to the fiduciary exception. *Hughes,* 525 U.S. at 443–44, 119 S.Ct. 755. Accordingly, plaintiffs' motion to compel is **GRANTED IN PART** as to document no. 358 pertaining to Jim Beck's email but **DENIED IN PART** as to emails to and from legal counsel.

■ Document no. 359 consists of three emails; the first email originated from Claude Sisson, outside counsel, to Frank Magill, in house counsel, dated August 16, 2004; the second email is from Frank Magill to Norma Gonzalez, and related the information provided by Sisson; and the third email is a duplicate of the email from Jim Beck found in document no. 358. Clearly, the first two emails are subject to the attorney-client privilege while the third email has already been found not to be privileged. Further, as the emails pertain to amending and/or terminating the OOR concessions, the first two emails are not subject to the fiduciary exception. *Hughes,* 525 U.S. at 443–44, 119 S.Ct. 755.

Document no. 1065 was produced in redacted form and consists of several emails between client representatives beginning in August of 2004. The redacted emails are between Jim Beck and Norma Gonzalez. Although defendants have not met their burden of establishing the communication is protect-

ed by the attorney-client privilege; the communications nevertheless contain work product prepared in anticipation of litigation. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. at 676; *Raytheon Aircraft Co. v. U.S. Army Corps. of Eng'rs*, 183 F.Supp.2d 1280, 1288 (D.Kan. 2001). Plaintiffs' motion to compel is **GRANTED IN PART** as to document nos. 358 and 359, as they pertain to Mr. Beck's email, and **DENIED IN PART** as to the remaining emails found in document nos. 358 and 359, and as to document no. 1065.

### 9. DOCUMENT NO. 184 DESCRIBED IN DEFENDANTS' PRIVILEGE LOG AS COMMUNICATIONS CONTAINING REQUEST FOR LEGAL ADVICE REGARDING TELEPHONE CONCESSIONS LITIGATION.

Document no. 184 is a memo dated September 2004 from Anne Libbin to Frank Magill, both of whom are attorneys for AT & T. In its 2007 log, the defendants asserted both the attorney-client privilege and work product protection. The document in question is marked "attorney-client privileged/confidential advice to employer in its capacity as settlor of employee benefit plans" and clearly is a communication made for the purpose of giving or obtaining legal advice or services. *See Navigant Consulting, Inc.*, 220 F.R.D. at 474. Further, the document was prepared in anticipation of litigation or trial and reveals the "mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation." FED.R.CIV.P. 26(b)(3); *Upjohn Co.*, 449 U.S. at 400, 101 S.Ct. 677. As document no. 184 is subject to the attorney-client privilege and work product protection, plaintiffs' motion to compel is DENIED as to this document.

### 10. DOCUMENT NOS. 185, 187, 186 AND 1948* DESCRIBED IN DEFENDANTS' PRIVILEGE LOG AS COMMUNICATIONS CONTAINING/REQUESTING LEGAL ADVICE FROM OUTSIDE COUNSEL REGARDING TELEPHONE CONCESSIONS LITIGATION

In its 2007 log, the defendants asserted both the attorney-client privilege and work

product protection as to document nos. 185, 187, 186, and 1948. Document nos. 185, 186 and 187 are emails between defendants' attorneys regarding related litigation as it pertains to the OOR concessions. While the documents do not necessarily reflect communications between attorney and client, they clearly were prepared in anticipation of litigation or trial and reveal the "mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation." FED. R.CIV.P. 26(b)(3); *Upjohn Co.*, 449 U.S. at 400, 101 S.Ct. 677.

Document no. 1948 was produced in redacted form with the redacted portion relating legal advice as it pertains to the OOR telephone concessions. It is unclear who the author and recipient of this document are, when the document was created, and whether any asserted privilege was otherwise waived. *In re Grand Jury Proceedings*, 517 F.2d at 670. However, defendants have also timely asserted the work product protection as to this document. The focus of determination whether a document falls within the work product protection is whether "the motivating purpose" behind its creation was to aid in litigation or possible future litigation. See In re Universal Serv. Fund Tel. Billing Practices Litig., 232 F.R.D. at 676; *Raytheon Aircraft Co.*, 183 F.Supp.2d at 1288. Given the content, the Court finds the redacted portion of document no. 1948 is protected from disclosure by the work product doctrine. According, plaintiffs' motion to compel is **DENIED** as to documents nos. 185, 187, 186 and 1948.

### 11. DOCUMENTS NOS. 188, 189, 190, 195, 448, 449, 1046*, 1069*, 1947* AND 1949* DESCRIBED IN DEFENDANTS' PRIVILEGE LOG AS COMMUNICATIONS CONTAINING LEGAL ADVICE AND CONTAINING/DISCUSSING ADVICE OF OUTSIDE LEGAL COUNSEL REGARDING TELEPHONE CONCESSIONS LITIGATION

In its 2007 log, the defendants asserted both the attorney-client privilege and work

product protection as to document nos. 188, 189, 190, 195, 448–49, 1046, 1069, 1947, and 1949. Documents nos. 188, 189, 190 and 195 are emails between client representatives and their attorneys dated November 2004, regarding amending/terminating the OOR telephone concessions. Document no. 188 is an email from Mr. Sisson to Norma Gonzalez, labeled "attorney work product/advice to employer in anticipation of litigation." In addition to satisfying the 4–factor attorney-client inquiry, the communication also appears to have been created in anticipation of litigation or trial. *See In re Grand Jury Proceedings,* 517 F.2d at 670; *see also In re Universal Serv. Fund Tel. Billing Practices Litig.,* 232 F.R.D. at 676. Accordingly, the communication is protected from disclosure by both the attorney-client communication and the work product protection.

Document no. 189 is an email from Norma Gonzalez to Karen Jennings relaying Mr. Sisson's email referenced to in document no. 188. Ms. Gonzalez copies Mr. Sisson's email in its entirely, including Mr. Sisson's label of "attorney work product/advice to employer in anticipation of litigation." Document no. 190 is a copy of document no. 189, which was forwarded to Frank Magill by Norma Gonzalez, requesting his legal opinion. Document no. 195 once again duplicates document no. 189 but includes an additional email in response from other client representatives and attorneys. Similarly, documents no. 448–49 are emails originating with Norma Gonzalez's email to Karen Jennings relaying Mr. Sisson's email in its entirely, including Mr. Sisson's label of "attorney work product/advice to employer in anticipation of litigation." It is apparent from each of these emails that the communications were between client representatives and their attorneys regarding legal advice pertaining to termination of the OOR concessions. As the parties in question all shared a common legal interest, the sharing of this communication does not result in the loss of the privilege. *See In re Auclair,* 961 F.2d at 69.

Document nos. 1046, 1069, 1947 and 1949 were produced in redacted form. The redacted portions comprise Mr. Sisson's legal advice referred to in document no. 188. For reasons previously set forth, the redacted portions of these documents are subject to the attorney-client privilege and work product protection. Accordingly, plaintiffs' motion to compel these documents is **DENIED.**

12. **DOCUMENTS NOS. 192, 193, 194, 1171 AND 1950 DESCRIBED IN DEFENDANTS' PRIVILEGE LOG AS COMMUNICATIONS CONTAINING REQUEST FOR INFORMATION FROM LEGAL COUNSEL AND CONTAINING/DISCUSSING LEGAL ADVICE REGARDING TELEPHONE CONCESSIONS LITIGATION**

In its 2007 log, the defendants asserted both the attorney-client privilege and work product protection as to document nos. 192, 193, 194, 1171 and 1950. Documents nos. 192 is an email that originates from Mr. Giltner to Norma Gonzalez requesting information regarding the OOR concessions. This email was then forwarded to client representatives. Document no. 193 is a copy of the initial email from Mr. Giltner requesting the information. Document no. 194 is a copy of this same email, however it appears the request for information was initially sent to Mr. Giltner by Mr. Magill. Document no. 1171 consists of a copy of the same email from Mr. Giltner to Norma Gonzalez referred to above, along with responses from client representatives who were copied. Finally, document no. 1950 consists of an email created during the same time frame and involving many of the same recipients of the previous emails; this email provides information in response to Mr. Giltner and Mr. Magill's initial request.

The emails reflect communications made for the purpose of giving or obtaining legal advice or services. *See Navigant Consulting, Inc.,* 220 F.R.D. at 474; *Borase v. M/A COM, Inc.,* 171 F.R.D. 10, 14 (D.Mass.1997); *First Wisconsin Mortgage Trust v. First Wisconsin Corp.,* 86 F.R.D. 160, 174 (D.C.Wis.1980). Further, the communications appear to have been made to facilitate the rendition of predominantly legal advice or services to the client. *See Navigant Consulting, Inc.,* 220 F.R.D. at 474; *see also*

*Neuder*, 194 F.R.D. at 293. As such, the communications are subject to the attorney-client privilege; further, given the emails contents, the Court finds that the fiduciary exception does not otherwise apply. *In re Grand Jury Proceedings*, 517 F.2d at 670; *see also Hughes*, 525 U.S. at 443–44, 119 S.Ct. 755. Accordingly, plaintiffs' motion to compel these documents is **DENIED.**

### 13. DOCUMENTS NOS. 197, 198, 199, 200, 201 AND 1101 DESCRIBED IN DEFENDANTS' PRIVILEGE LOG AS COMMUNICATIONS CONTAINING LEGAL ADVICE REGARDING TELEPHONE CONCESSIONS LITIGATION

In its 2007 log, the defendants asserted both the attorney-client privilege and work product protection as to document nos. 197, 198, 199, 200, 201 and 1101. Document nos. 197 through 201 consist of emails, much of them duplicates, between client representatives and their attorneys requesting and providing legal advice regarding terminating concessions. These emails satisfy the 4–factor attorney-client inquiry and are not otherwise subject to the fiduciary exception. *In re Grand Jury Proceedings*, 517 F.2d at 670; *see also Hughes*, 525 U.S. at 443–44, 119 S.Ct. 755.

Document no. 1101 consists of emails that originated between Thomas Giltner and Karol Sweitzer, who are attorneys, dated February of 2005, shortly before suit was filed in this case. A copy of the original email was sent to Norma Gonzalez who then forwarded the email to other attorneys and client representatives who respond accordingly. The emails pertain to termination of the OOR concessions and otherwise satisfy the 4–factor attorney-client inquiry. *In re Grand Jury Proceedings*, 517 F.2d at 670; *see also Hughes*, 525 U.S. at 443–44, 119 S.Ct. 755. Further, the document, prepared in anticipation of litigation or trial, reveals the "mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation." FED.R.CIV.P. 26(b)(3); *Upjohn Co.*, 449 U.S. at 400, 101 S.Ct. 677. Accordingly, plaintiffs'

motion to compel these documents is **DENIED.**

### 13a. DOCUMENT NO. 1170 DESCRIBED IN DEFENDANTS' PRIVILEGE LOG AS COMMUNICATIONS CONTAINING/DISCUSSING LEGAL ADVICE REGARDING TELEPHONE CONCESSIONS LITIGATION

Document no. 1170 originates as an email dated February 2005, from Gwen Melvin to Frank Magill seeking legal advice. A second email was sent to David Vegliante, an attorney, also requesting legal advice. The legal advice was then relayed to other supervisory personnel. In its 2007 log, the defendants asserted both the attorney-client privilege and work product protection as to this document. Clearly, the emails between legal counsel and clients seeking and/or discussing legal advice are communications subject to the attorney-client privilege. *In re Grand Jury Proceedings*, 517 F.2d at 670. Additionally, as these emails relate to discussions regarding terminating OOR concessions, the fiduciary exception does not otherwise apply. *Hughes*, 525 U.S. at 443–44, 119 S.Ct. 755. Further, the emails between client representatives relaying legal advice is also subject to the privilege which was not waived by the sharing of this information between parties who have a common legal interest. *See In re Auclair*, 961 F.2d at 69. Accordingly, plaintiffs' motion to compel document nos. 1170 is **DENIED.**

### 14. DOCUMENT NO. 202 DESCRIBED IN DEFENDANTS' PRIVILEGE LOG AS COMMUNICATIONS CONTAINING/DISCUSSING LEGAL ADVICE REGARDING OOR CONCESSIONS LITIGATION

Document no. 202 is an email that originated from Margaret Cerrudo to Norma Gonzalez and is dated March 2005. Defendants have asserted both the attorney-client privilege and work product protection as to this document. A review of this document reflects that it does not satisfy the 4–factor attorney-client inquiry in that the communication was not made to a member of the bar

or his subordinate. *In re Grand Jury Proceedings*, 517 F.2d at 670. Instead, the communication appears to consist of the disclosure of underlying facts not protected by the privilege. *Upjohn, Co.*, 449 U.S. at 395–396, 101 S.Ct. 677.

However, defendants have also asserted the work product protection. The emails were prepared in anticipation of litigation or trial and reveal the "mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation." FED.R.CIV.P. 26(b)(3); *Upjohn Co.*, 449 U.S. at 400, 101 S.Ct. 677. Accordingly, plaintiffs' motion to compel is **DENIED** as to this document.

**15. DOCUMENTS NOS. 203, 204 AND 239 DESCRIBED IN DEFENDANTS' PRIVILEGE LOG AS COMMUNICATIONS REQUESTING LEGAL ADVICE AND REQUESTING INFORMATION REGARDING LEGAL ISSUES IN ANTICIPATION OF TELEPHONE CONCESSIONS LITIGATION**

In its 2007 log, the defendants asserted both the attorney-client privilege and work product protection as to document nos. 203, 204, and 239. Documents no. 203 is an email from Mr. Payne to client representatives and other counsel dated March 2005. It is marked "attorney client privilege," pertains to termination of the OOR concessions, and further, was prepared in anticipation of litigation and contains the "mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation." *In re Grand Jury Proceedings*, 517 F.2d at 670; *see also* FED. R.CIV.P. 26(b)(3); *Upjohn Co.*, 449 U.S. at 400, 101 S.Ct. 677. The Court finds it is subject to both the attorney-client privilege and work product protection.

Document no. 204 is an email dated March 2005, from an attorney to the client's representative seeking information regarding concessions. Similarly, document no. 239 is an email from Mr. Payne to client representatives and other attorneys requesting information regarding amending the OOR concessions. While document no. 204 does not specifically regard the plan's termination or amendment, and therefore, could be subject to the fiduciary exception, it is clearly protected by the work product protection as it was prepared in anticipation of litigation. FED.R.CIV.P. 26(b)(3); *Upjohn Co.*, 449 U.S. at 400, 101 S.Ct. 677. Document no. 239 does pertain to amending the plan and otherwise satisfies the 4–prong attorney-client inquiry. *In re Grand Jury Proceedings*, 517 F.2d at 670. Further, this document too appears to qualify as work product since it was prepared in anticipation of litigation and further, contains the "mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation." FED.R.CIV.P. 26(b)(3); *Upjohn Co.*, 449 U.S. at 400, 101 S.Ct. 677. Accordingly, plaintiffs' motion to compel is **DENIED** as to these documents.

**16. DOCUMENTS NOS. 205 AND 206 DESCRIBED IN DEFENDANTS' PRIVILEGE LOG AS COMMUNICATIONS PROVIDING INFORMATION GATHERED AT THE REQUEST OF LEGAL COUNSEL/PROVIDED TO LEGAL COUNSEL REGARDING ANTICIPATION OF TELEPHONE CONCESSIONS LITIGATION**

Document no. 205 is an email and its attachment from Norma Gonzalez to Mr. Sisson and Mr. Magill dated March 2005. In its 2007 log, the defendants asserted both the attorney-client privilege and work product protection as to document nos. 205 and 206. The attachment, found in document no. 206 is a memo prepared by Norma Gonzalez for Claude Sisson. The memo, prefaced with a statement, "[p]er your request," provides information regarding OOR concessions and appears to have been made for the purpose of obtaining legal advice or services. *See Navigant Consulting, Inc., 220 F.R.D.* at 474; *Borase v. M/A COM, Inc.*, 171 F.R.D. 10, 14 (D.Mass.1997). Further, the document was prepared in anticipation of litigation or trial and reveals the "mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation." FED. R.CIV.P. 26(b)(3); *Upjohn Co.*, 449 U.S. at

400, 101 S.Ct. 677. Accordingly, plaintiffs' motion to compel is **DENIED** as to document nos. 205 and 206.

## 17. DOCUMENTS NOS. 207, 208 AND 240 DESCRIBED IN DEFENDANTS' PRIVILEGE LOG AS COMMUNICATIONS CONTAINING REQUEST FOR LEGAL ADVICE AND DOCUMENT PREPARED AT THE DIRECTION OF IN HOUSE COUNSEL REGARDING LEGAL ISSUES

In its 2007 log, the defendants asserted solely the attorney-client privilege as to documents nos. 207 and 208; however, the defendants asserted both the attorney-client privilege and work product protection as to document no. 240. Document no. 207 is an email dated March 21, 2005, that originated from Brenda Clark, Associate Director–Regulatory, and was sent to Jeffrey Lee, Gwen Melvin–Neloms, and Annie Libbin in Legal; it was later forwarded to Norma Gonzalez. Ms. Clark's email is labeled "attorney-client privy" and is directed to legal counsel, and other client representatives. Further, the email, which pertains to withdrawing employee/retiree telephone concession service relates to a fact of which the attorney was informed by his client without the presence of strangers "for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding." *In re Grand Jury Proceedings,* 517 F.2d at 670. Accordingly, the document is subject to the attorney-client privilege.

■■ Document no. 208 is a Draft of a Resolution dated April 21, 2005. It does not appear to contain legal advice, nor does it purport to reveal any communication given to defendants by legal counsel. Further, in her email referencing this resolution, Ms. Clark states that the "Resolution process . . . is subject to general Case 5:05–cv–00233–XR Document 406 Filed 11/12/2009 Page 35 of 38 public comment." In fact, this Resolution can be found online at http://docs.cpuc.ca/gov/published/COMMENT_RESOLUTION/44452.htm. Accordingly, the Court finds defendants have not met their burden of establishing that this communication meets the required elements of the attorney-client privilege; therefore, document no. 208 is not afforded the privilege's protection. Further, as defendants failed to timely assert work product protection as to this document, this claim has been waived. *See* FED.R.CIV.P. 26(b)(5)(A).

Document no. 240 is a copy of the same email referred to in document no. 207 which was forwarded to Michael Payne in legal, who then responds. For reasons previously set forth in response to document no. 207, the Court finds document no. 240 is likewise subject to the attorney-client privilege. Accordingly, plaintiffs' motion to compel is **DENIED** as to document nos. 207 and 240 and **GRANTED** as to document no. 208.

## 18. DOCUMENTS NOS. 237 AND 242 DESCRIBED IN DEFENDANTS' PRIVILEGE LOG AS DOCUMENTS CONTAINING/DISCUSSING LEGAL ADVICE REGARDING TELEPHONE CONCESSION LITIGATION

In its 2007 log, the defendants asserted both the attorney-client privilege and work product protection as to document nos. 237 and 242. These documents are identical and reflect a memo dated March 2005, from M. Payne containing legal advice pertaining to this litigation. The document(s) clearly satisfies the four-factor attorney-client inquiry in that the holder of the privilege is a client; the communication was made by Mr. Payne, a member of the bar acting in his capacity as an attorney; for the purpose of providing legal advice; and the privilege was claimed and not waived by the client. *In re Grand Jury Proceedings,* 517 F.2d at 670. Further, the document(s) relates to Mr. Payne's advice regarding the elimination of OOR Concession Services and therefore, the fiduciary exception does not apply. *Hughes,* 525 U.S. at 443–44, 119 S.Ct. 755. Accordingly, plaintiffs' motion to compel as to these documents is **DENIED.**

## 19. DOCUMENTS NOS. 191, 196, 1945, 1946 DESCRIBED IN DEFENDANTS' PRIVILEGE LOG AS COMMUNICATIONS CONTAINING/DISCUSSING LEGAL ADVICE IN ANTICIPATION OF LITIGA-

## TION[5]

Defendants asserted both the attorney-client privilege and work product protection as to documents nos. 191, 196, 1945 and 1946 in defendants' 2007 log. The contents of these documents are duplicitous and primarily consist of an email, dated November 2004, from Norma Gonzalez to Karen Jennings and various supervisory personnel wherein Ms. Gonzalez states she has discussed the OOR telephone concession with Claude Sisson and is including, what is presumably, his update since the remaining portion of the email is prefaced by the notice, "Attorney Work Product" and "Advice to Employer in Anticipation of Litigation."[6] In fact, Ms. Gonzalez sent this email to Frank Magill, who responds that he "agree[s] completely with Claude's assessment . . . ."

The documents are, for the most part, communications subject to the attorney-client privilege and discuss terminating the OOR concession; therefore, the fiduciary exception does not apply. *Hughes,* 525 U.S. at 443–44, 119 S.Ct. 755. Further, the document conveying Claude Sisson's legal assessment appears to have been prepared in anticipation of litigation or trial and reveals the "mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation." FED.R.CIV.P. **26(b)(3)**; *Upjohn Co.,* 449 U.S. at 400, 101 S.Ct. 677. As these documents are subject to the attorney-client privilege and work product protection, plaintiffs' motion to compel these documents is **DENIED.**

### CONCLUSION

For the foregoing reasons, the Court finds that plaintiffs' motion to compel has some merit and is, therefore, **GRANTED IN PART** and **DENIED IN PART.**

**IT IS ORDERED** that the following documents be produced within seven (7) days from the date of this Order: document nos. 179, 208, 358 (Beck's email), 359 (Beck's email), 1371, 1382, 1383, 1384, 1385, and 1941 (emails between client representatives).

---

5. Although withheld, these documents are not addressed in any of defendants' categories.

6. The email in question appears to have previously been determined to be privileged. *See* **Docket no. 167.**