# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-30830

United States Court of Appeals
Fifth Circuit

**FILED**

May 6, 2014

Lyle W. Cayce
Clerk

EXXON MOBIL CORPORATION,

Plaintiff–Appellant

versus

CLARENCE HILL; TIMOTHY J. FALCON; JEREMIAH A. SPRAGUE;
FRANK M. BUCK, JR.,

Defendants–Appellees.

Appeals from the United States District Court
for the Eastern District of Louisiana

Before SMITH, ELROD, and SOUTHWICK, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Exxon Mobil Corporation ("Exxon Mobil") appeals a judgment that dismissed its intervention based on the district court's ruling that a memorandum prepared by Exxon Mobil's in-house counsel was ineligible for the protections of the attorney-client privilege. Concluding that the memorandum is privileged, we vacate and remand.

No. 13-30830

I.

In the late 1980s, Exxon Mobil was negotiating with another company ("ITCO") over a proposed contract under which ITCO would clean and store oilfield production tubulars for Exxon Mobil. The parties knew that some of the tubulars had accumulated scale, some of which was contaminated with "naturally occurring radioactive material" or "NORM." ITCO had created a new device designed to contain any dust generated by cleaning NORM-contaminated scale from the tubulars. As part of its due diligence, Exxon Mobil sent an industrial hygienist, Lindsey Booher, to conduct tests designed to reveal whether the device would work as intended. Booher wrote a confidential report to Exxon Mobil employee John Guidry containing the results of his test, including four tables, numbered I through IV, showing the air-sampling data.

During their negotiations, ITCO asked Guidry for Booher's test results. Guidry, in turn, sought advice from Rosemary Stein, an in-house lawyer for Exxon Mobil, on how to respond. Stein suggested that Guidry disclose only Table IV, because it contained the only data that ITCO specifically had requested, and that Guidry remove the caption "Table IV" so as not to flag the existence of other tables. According to the defendants, the "withheld data confirms much higher levels of radiation" than what Table IV suggested. Stein also drafted a suggested response to accompany the table, including a disclaimer of any warranty as to the data's accuracy and a statement that the data was created solely for Exxon Mobil's internal use.

Stein's advice was recorded in a memorandum dated July 22, 1988. Now referred to by the parties as the "Stein Memo," it is the epicenter of the fight on appeal.

Various persons, in the ensuing years, have sued Exxon Mobil, ITCO, or both, alleging exposure to NORM at ITCO's pipe yard. In 2008, in the course of discovery, Exxon Mobil accidentally produced a number of allegedly

2

No. 13-30830

privileged documents, including the Stein Memo. Months later, Exxon Mobil discovered the inadvertent production. Pursuant to Louisiana Code of Civil Procedure article 1424(D) (a claw-back provision), its counsel sent a letter to plaintiffs' attorney Timothy Falcon informing him of the error and demanding a return of the production. Although he returned the CDs and made no objection to Exxon Mobil's assertion of privilege, Falcon kept a copy of the Stein Memo and distributed it to other plaintiffs' attorneys, who in turn attempted to use it in other cases.

Exxon Mobil had a mixed record asserting its privilege over the Stein Memo in various state suits. Attempting to prevent its use in state litigation once and for all, it sued in federal court (*Exxon Mobil Corp. v. Falcon*, No. 12-454 (E.D. La.)) ("*Falcon*") seeking an injunction preventing the plaintiffs' attorneys from using the Stein Memo in state court. Judge Fallon was assigned to the case, and he made no ruling on the merits of Exxon Mobil's claim; instead, he stayed the case indefinitely out of federalism concerns.

Separate from the *Falcon* suit, plaintiff Clarence Hill, among others, sued Exxon Mobil and several other defendants in state court, alleging damages caused by exposure to NORM. With the other defendants' consent, Exxon Mobil removed to federal court, then docketed as *Hill v. Exxon Mobil Corp.*, No. 11-2786 (E.D. La.) ("*Hill*"). Eventually, Hill voluntarily dismissed Exxon Mobil with prejudice, and the *Hill* case continued against other defendants.

Hill's counsel then filed the Stein Memo into the record as part of a fight over expert testimony. Exxon Mobil moved for and was granted leave to intervene in *Hill* to assert its privilege over the Stein Memo. The district court severed Exxon Mobil's intervention from the main *Hill* action and transferred the intervention to Judge Fallon, with whom the *Falcon* case was still (nominally) pending. The intervention was given a new caption (*Exxon Mobil Corp. v. Hill*) and docket number (No. 13-236). That is the case on appeal.

No. 13-30830

After the transfer, Exxon Mobil moved to enforce its attorney-client privilege over the Stein Memo, to have the memorandum stricken from the record, and to compel Hill's attorneys to destroy or return all copies to Exxon Mobil. The district court denied the motion and entered final judgment dismissing Exxon Mobil's intervention. The basis for its holding was that the advice in the Stein Memo was primarily *business* advice rather than *legal* advice.

II.

In this diversity case, Louisiana provides the applicable law of privilege. *See* FED. R. EVID. 501. The Louisiana attorney-client privilege, codified in Article 506 of the Louisiana Code of Evidence, provides that "[a] client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, *made for the purpose of facilitating the rendition of professional legal services to the client*." LA. CODE EVID. ANN. art. 506(B) (emphasis added). The Code then provides a number of exceptions and definitions, but the parties agree that the beginning and end of this case is the "made for the purpose of facilitating the rendition of professional legal services" language in article 506.

The parties disagree, however, on the standard of review. Citing *United States v. Seale*, 600 F.3d 473, 492 (5th Cir. 2010), Hill claims that the application of the attorney-client privilege is a question of fact, which we review only for clear error. Exxon Mobil does not dispute the general proposition but, citing *United States v. McFerrin*, 570 F.3d 672, 675 (5th Cir. 2009), maintains that, in this particular case, we owe no deference to the district court's privilege determination because it was based on legal error. We decline to decide which side has the better of this argument because, even assuming that we are

4

No. 13-30830

reviewing for clear error, we would still reverse. [1]

The Stein Memo reflects the advice by in-house counsel concerning disclosure of certain data during contract negotiations. Context here is key: The document was prepared during contract negotiations in which both sides were assisted by legal counsel. The negotiations, according to the record, involved a number of legal issues, including indemnity for downstream tort claims, storage and handling of nuclear residue, licensure, trade secrets, and other issues.

Disclosure of material facts is a universal concern in contract law. When ITCO requested internal data prepared by and on behalf of Exxon Mobil, it is no surprise that Exxon Mobil would seek advice from its attorney as to how to respond. All of this is to say that the context in which the Stein Memo was produced—even before we say anything of the memorandum itself—strongly suggests that Exxon Mobil was approaching its in-house counsel for just the sort of lawyerly thing one would expect of an in-house lawyer: advice on transactional matters. Though we recognize that in-house counsel can often play a variety of roles within an organization, this record is devoid of any indication that Stein was providing business advice divorced from its legal implications.[2]

Especially when viewed in context, the Stein Memo cannot be mistaken for anything other than legal advice. Stein drafted a proposed response to ITCO in which she included elaborate language disclaiming liability for any reliance ITCO may have on the data, stating that the data was prepared for Exxon Mobil's own internal use and disclaiming any warranty as to the

---

[1] We also find it unnecessary to address Exxon Mobil's nuanced contention that the district court applied an erroneously higher standard for the application of the attorney-client privilege for in-house counsel *vis-à-vis* outside counsel.

[2] *Cf. State v. Montgomery*, 499 So. 2d 709, 713 (La. App. 3d Cir. 1986), (holding defense attorney communications from defense attorney not to be privileged because record established that the advice was sought as that of a friend, not a client), *writ denied*, 502 So. 2d 106 (La. 1987).

accuracy of the test results. The manifest purpose of the draft was to deal with what would be the obvious reason Exxon Mobil would seek its lawyer's advice in the first place, namely to deal with any legal liability that may stem from under-disclosure of data, hedged against any liability that may occur from any implied warranties during complex negotiations.[3]

For these reasons, even assuming *arguendo* that we are reviewing only for clear error, we are left with a "definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). The judgment of dismissal is VACATED and REMANDED for whatever appropriate actions the district court may elect to take in light of our determination that the Stein Memo is protected by the attorney-client privilege.

---

[3] *See LGS Natural Gas Co. v. McFarland Energy, Inc.*, Civ. Ac. No. 96-3163, 1997 WL 96376 (E.D. La. Mar. 5, 1997) (opinion of magistrate judge) (holding, as privileged, various drafts of handwritten notes and editions made to drafts of a written contract, assuming —without having direct evidence other than the nature of the notes themselves—that they were made by in-house counsel); *cf. Se. Pa. Transp. Auth. v. Caremark PCS Health, L.P.*, 254 F.R.D. 253 (E.D. Pa. 2008); *R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, 2001 WL 1286727 (N.D. Ill. Oct. 24, 2001) (both applying the attorney-client privilege for advice over the implications of proposed contract terms). *See also Brookshire Bros. Holding, Inc. v. Total Containment, Inc.*, 2:04-CV-1150, 2006 WL 845731 (W.D. La. Mar. 30, 2006) (holding that an email to a person who was both in-house counsel and a "Chief Administrative Officer" was not protected where there was no indication in the email that the person was approached as a lawyer for legal advice).