# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20314

United States Court of Appeals
Fifth Circuit

**FILED**

November 16, 2017

Lyle W. Cayce
Clerk

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

        Plaintiff - Appellant

v.

BDO USA, L.L.P.,

        Defendant - Appellee

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before STEWART, Chief Judge, and KING and DENNIS, Circuit Judges.

CARL E. STEWART, Chief Judge:

IT IS ORDERED that our prior panel opinion, *EEOC v. BDO USA, L.L.P.*, 856 F.3d 356 (5th Cir. 2017), is WITHDRAWN, and the following opinion is SUBSTITUTED therefor.

During the course of an employment discrimination investigation, the Equal Employment Opportunity Commission ("EEOC") brought a subpoena enforcement action against BDO USA, L.L.P. ("BDO") in federal district court. The EEOC sought production of information relating to the investigation and asserted that BDO's privilege log failed to establish that the attorney-client privilege protected the company's withheld documents. The district court held

No. 16-20314

that the log was sufficient and also granted BDO's request for a protective order.  For the reasons that follow, we VACATE and REMAND.

## I. BACKGROUND

BDO, a financial and consulting services firm, hired Hang Bower as a Human Resources ("HR") Manager in 2007.  Bower, an Asian-American female, was eventually promoted to Chief Human Resources Officer, the company's highest-ranking HR position.  While at BDO, Bower was responsible for investigating discrimination complaints and communicated with both in-house and outside counsel.  Bower resigned from her employment with BDO on January 15, 2014.

On July 9, 2014, Bower filed a charge with the EEOC, alleging that BDO violated Title VII and the Equal Pay Act by subjecting her and other female employees to gender discrimination, retaliation, and a hostile work environment.  Bower claimed, *inter alia*, that: (1) as a result of her efforts to assure compliance with company policies, BDO removed her from leadership meetings, decreased her job responsibilities, reprimanded her, and ordered her to stop investigating certain employees; (2) in retaliation for her "expressed determination" to investigate male managers and a male partner, she was stripped of her investigatory authority and removed from the Chief Compliance Officer position; (3) top corporate management shielded a male manager accused of discrimination and blocked an appropriate investigation; (4) BDO fired or constructively discharged female employees who complained about mistreatment; and (5) BDO discriminated against non-white employees. On August 18, 2014, BDO filed a position statement in response to Bower's charge, providing additional information, denying the allegations, and arguing that the charge should be dismissed for lack of probable cause.

2

No. 16-20314

Between October 2014 and June 2015, the EEOC issued three Requests for Information ("RFIs") to BDO, seeking details related to the individual and class-wide claims in Bower's charge. In December 2014, BDO filed another position statement that outlined BDO's investigation policy and rejected Bower's allegations that the company blocked her attempts to investigate discrimination claims. BDO, however, objected to providing other information it believed was "far beyond the scope of Bower's individual charge." BDO also alleged that the EEOC was eliciting—and Bower was revealing—attorney-client privileged communications between Bower and BDO's in-house and outside counsel. In June 2015, BDO stated that it could not provide any additional information until the matter was "transferred to a new investigator who ha[d] not been tainted by reviewing, or eliciting, privileged information."

On July 14, 2015, the EEOC issued a subpoena to BDO, seeking documents and information relating to the investigation. In response, BDO provided some, but not all, of the requested information and created a privilege log cataloging withheld documents as to which it asserted attorney-client privilege. The 278 entries in the log's final version referenced "confidential" emails, memoranda, and other documents, and included communications between (1) Bower and in-house and outside counsel, (2) other BDO employees and in-house and outside counsel, (3) non-attorney employees with counsel courtesy copied, and (4) non-attorney employees regarding legal advice (but not involving any attorneys).

On December 10, 2015, the EEOC filed a subpoena enforcement action in federal district court. According to the EEOC, BDO's refusal to comply with the subpoena had "delayed and hampered the investigation," and the privilege log BDO submitted contained various deficiencies: certain entries "lack[ed] sufficient detail and specificity," were "simply incomplete," and/or appeared to

3

reference communications that were not exchanged with or copied to an attorney, or that appeared only to courtesy copy counsel. On February 4, 2016, BDO filed its response, which included a request for a protective order enjoining the EEOC from questioning Bower and BDO employees regarding their conversations with BDO's counsel, and requiring the EEOC to return or destroy evidence of witness interviews and other documents that memorialized the privileged conversations.

On February 9, 2016, the magistrate judge presided over the show cause hearing. She rejected the EEOC's contention that communications BDO claimed were privileged were not protected and stated that the EEOC had not "made a sufficient showing" that the privilege log reflected "an improperly claimed privilege." Ultimately, the magistrate judge denied the EEOC's request to enforce the subpoena and for an in camera review of the documents, explaining: "I am not going to look through 278 documents. I decline to do that. The privilege log seems adequate." The magistrate judge also granted BDO the protective relief it requested, stating that it was "not Ms. Bower's job to decide what's attorney-client [privilege]" and that "anything that comes out of [BDO's] lawyer's mouth is legal advice."

The EEOC filed objections to the magistrate judge's order in the district court, arguing that the decision was based "on incorrect interpretations of the facts and the applicable law." The EEOC appended to its objections Bower's declaration, which stated, *inter alia*, that many of the communications she exchanged with BDO's counsel were for the purpose of seeking or imparting business, not legal, advice regarding officer investigations and how to carry out her HR duties. Similarly, Bower maintained that emails exchanged between her and other non-attorneys pertaining to these investigations were made for the primary purpose of conveying business directives or factual information. Bower

No. 16-20314

further claimed that, in order to protect communications from disclosure in future legal proceedings, BDO required her to forward to or courtesy copy in-house counsel on virtually all communications pertaining to employee investigations and to include in HR-related emails a false designation that the communication was prepared "at the request of legal counsel."[1]

BDO filed an opposition to the EEOC's objections, arguing that they should be overruled and that the district court did not have discretion to consider Bower's declaration. On March 21, 2016, the district court summarily affirmed the magistrate judge's order. The EEOC timely appealed, seeking that (1) the question of whether the attorney-client privilege is available to the withheld documents on BDO's privilege log be remanded to the district court and (2) the protective order be reversed and remanded.

## II. DISCUSSION

### A. Privilege Log

We begin with the question of whether the district court erred when it accepted BDO's claim of attorney-client privilege based on the privilege log.

### 1. Legal Standards

"The application of the attorney-client privilege is a 'question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents.'" *In re Auclair,* 961 F.2d 65, 68 (5th Cir. 1992) (quoting *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985)); *see also Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981). "The clearly

---

[1] BDO argues that the district court did not have discretion to consider Bower's declaration because the EEOC did not submit the declaration to the magistrate judge. However, the subpoena was a dispositive matter triggering Federal Rule of Civil Procedure 72(b) and the district court's right to receive further evidence. *See EEOC v. Schwan's Home Serv.*, 707 F. Supp. 2d 980, 987 (D. Minn. 2010) (holding that "an application to enforce an administrative subpoena . . . where there is no pending underlying action before the [c]ourt, is generally a dispositive matter"); *see also NLRB v. Frazier*, 966 F.2d 812, 817–18 (3d Cir. 1992).

erroneous standard of review applies to the district court's factual findings." *King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 721 (5th Cir. 2011) (quoting *United States v. Neal*, 27 F.3d 1035, 1048 (5th Cir. 1994)). We review de novo the district court's application of the controlling legal standards. *See id.*; *In re Avental, S.A.*, 343 F.3d 311, 318 (5th Cir. 2003).

"The attorney-client privilege limits the normally broad disclosure requirements of Federal Rule of Civil Procedure 26 . . . ." *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 472 (E.D. Pa. 2005). For a communication to be protected under the privilege, the proponent "must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997). Determining the applicability of the privilege is a "highly fact-specific" inquiry, and the party asserting the privilege bears the burden of proof. *Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009) (citing *United States v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978)); *see also Hodges*, 768 F.2d at 721. "Once the privilege has been established, the burden shifts to the other party to prove any applicable exceptions." *Perkins v. Gregg Cty.*, 891 F. Supp. 361, 363 (E.D. Tex. 1995) (citation omitted). Ambiguities as to whether the elements of a privilege claim have been met are construed against the proponent. *See Scholtisek v. Eldre Corp.*, 441 F. Supp. 2d 459, 462–63 (W.D.N.Y. 2006) (listing cases). Because the attorney-client privilege "has the effect of withholding relevant information from the fact-finder," it is interpreted narrowly so as to "appl[y] only where necessary to achieve its purpose." *Robinson*, 121 F.3d at 974 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). In keeping with this well-settled principle and the broad investigatory and subpoena authority

given to agencies, courts have indicated that the privilege should be granted cautiously where administrative investigations are involved. *See F.T.C. v. TRW, Inc.*, 628 F.2d 207, 211 (D.C. Cir. 1980) (citing *Okla. Press Publ. Co. v. Walling*, 327 U.S. 186, 213 (1946)); *see also Cavallaro v. United States*, 284 F.3d 236, 245–46 (1st Cir. 2002) ("We note, but do not rely on, the doctrine of construing the privilege narrowly, which has particular force in the context of IRS investigations given the 'congressional policy choice *in favor of disclosure* of all information relevant to a legitimate IRS inquiry.'") (quoting *United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984)) (emphasis in original).[2]

## 2. Analysis

The EEOC argues that the district court erred when it concluded that all communications between a corporation's employees and its counsel are per se privileged and inverted the burden of proof, requiring that the EEOC prove that BDO improperly asserted the attorney-client privilege as to its withheld documents. *See Hodges*, 768 F.2d at 721. Although the magistrate judge did not explicitly address the burden of proof issue, she did, for example, state to the EEOC: "You haven't made a sufficient showing that that's an improperly claimed privilege when Counsel is . . . copied on a lot of these—on all these documents."

These pronouncements plainly run afoul of well-settled attorney-client privilege principles. There is no presumption that a company's communications with counsel are privileged. *See TVT Records v. Island Def Jam Music Grp.*, 214 F.R.D. 143, 148 (S.D.N.Y. 2003); *see also NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011) ("[I]t is true…that the attorney-client privilege does not

---

[2] We are aware of the U.S. Supreme Court's recent decision in *McLane Corp. v. EEOC*, No. 15-1248, 2017 WL 1199454 (S. Ct. Apr. 3, 2017). That case, while informative, has no bearing on the ultimate disposition of this case.

apply simply because documents were sent to an attorney"). Indeed, more is required.  To begin, "[i]t is vital to a claim of [attorney-client] privilege that the communication have been made and maintained in confidence." *Robinson*, 121 F.3d at 976 (quoting *United States v. Pipkins*, 528 F.2d 559, 563 (5th Cir. 1976)). "[A] confidential communication between client and counsel is privileged only if it is generated for the purpose of obtaining or providing legal assistance . . . ." *In re Cty. of Erie,* 473 F.3d 413, 419 (2d Cir. 2007). Additionally, "communications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, [are not] privileged," *Great Plains Mut. Ins. Co. v. Mut. Reinsurance Bureau*, 150 F.R.D. 193, 197 (D. Kan. 1993), nor are documents sent from one corporate officer to another merely because a copy is also sent to counsel, *Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc.*, No. 03-1496, 2004 WL 1299042, at \*25 (E.D. La. June 4, 2004).

For these reasons, courts have stated that simply describing a lawyer's advice as "legal," without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege. *See United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) ("Calling the lawyer's advice 'legal' or 'business' advice does not help in reaching a conclusion; it *is* the conclusion."). In *Exxon Mobil Corp. v. Hill*, this circuit explained that where there is a mixed discussion of business and legal advice, courts should consider the "context…key," ultimately seeking to glean the "manifest purpose" of the communication.  751 F.3d 379, 382 (5th Cir. 2014).

Given the "broad" and "considerable discretion" district courts have in discovery matters, we will not analyze the privilege logs in the first instance. *See Winfun v. Daimler Chrysler Corp.*, 255 F. App'x 772, 774 (5th Cir. 2007) (quoting *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d

546, 569 (5th Cir. 1996)). Nevertheless, the error below counsels us to reiterate that although Rule 26 "does not attempt to define for each case what information must be provided,"[3] 1993 Advisory Comm. Notes to Fed. R. Civ. P. 26 ¶ 33, a privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to "test[] the merits of" the privilege claim. *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982); *Interbake Foods, LLC*, 637 F.3d at 502 ("When a party relies on a privilege log to assert these privileges, the log must 'as to each document ... set[ ] forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed.'") (quoting *Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993)). Continual failure to adhere to Rule 26's prescription may result in waiver of the privilege where a court finds that the failure results from unjustified delay, inexcusable conduct, or bad faith.  *See United States v. Philip Morris Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003).

### 3. Conclusion

Based on the foregoing, by adopting the magistrate judge's recommendation, the district court erred when inverting the burden of proof, requiring that the EEOC prove that BDO improperly asserted the attorney-client privilege as to its withheld documents, and concluding that all communications between a corporation's employees and its counsel are *per se* privileged.  Accordingly, we vacate the district court's judgment and remand for

---

[3] Rule 26 provides that a party claiming the privilege shall describe the nature of withheld documents and communications "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege."  Fed. R. Civ. P. 26(b)(5)(A)(ii).

No. 16-20314

a determination applying the correct attorney-client privilege principles and legal standards.[4]

## B. Protective Order

We turn next to the question of whether the district court applied the correct legal standard when it granted BDO's request for a protective order.

### 1. Legal Standard

"[T]his court reviews discovery orders for abuse of discretion . . . ." *Crosswhite v. Lexington Ins. Co.*, 321 F. App'x 365, 367 (5th Cir. 2009); *see also Sanders v. Shell Oil Co.*, 678 F.2d 614, 618 (5th Cir. 1982) (reviewing protective order under abuse of discretion standard); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (analyzing the district court's adoption of the magistrate's judge's denial of a protective order for abuse of discretion). However, whether the district court used the correct legal standard in determining whether to issue a protective order is reviewed de novo. *See In re Avantel, S.A.*, 343 F.3d 311, 318 (5th Cir. 2003) (a court "review[s] the application of the controlling law de novo" in an attorney-client privilege case).

A "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The movant bears the burden of showing that a

---

[4] Given the serious nature of Bower's allegations through her affidavit and the lack of a countering affidavit from the party claiming privilege, we note that *in camera* review will likely be necessary. *See, e.g.*, *United States v. Zolin*, 491 U.S. 554, 569 (1989) ("[T]his Court has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for in camera inspection ... and the practice is well established in the federal courts.") (citations omitted); CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE & PROCEDURE § 5507 p. 573 (1986) (stating that courts widely use in camera inspections of privileged information to "determin[e] the preliminary facts of the privilege and its exceptions"). We acknowledge that the amount of documents in this case—278—does not present an unduly burdensome task for review.

protective order is necessary, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett,* 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). "A trial court enjoys wide discretion in determining the scope and effect of discovery," and it is therefore "unusual to find an abuse of discretion in discovery matters." *Sanders*, 678 F.2d at 618.

## 2. Analysis

After considering the parties' arguments, the magistrate judge concluded that the EEOC had communicated with witnesses and obtained information about their discussions with BDO attorneys. Based on these findings, she ordered the EEOC to: (1) refrain from communicating with Bower or other BDO employees about conversations with BDO's counsel; (2) disclose employees' names, dates of disclosure, and the substance of their conversations with BDO's counsel; (3) produce notes of each of these conversations, redacting the EEOC's work product; (4) return to BDO any documents containing privileged communications; and (5) destroy any notes or documents that were created as a result of reviewing the documents. The EEOC argues that the magistrate judge's decision to grant the protective order was grounded in the same legal error as the order denying the EEOC's application for subpoena enforcement—an "overly broad" legal standard that "wrongly swe[pt] under the umbrella of non-disclosure all communications involving an attorney."

We agree that the trial court appears to have applied an incorrect legal standard. During the show cause hearing, the magistrate judge on several occasions articulated an overly broad definition of attorney-client privilege. For example, during a colloquy with the EEOC regarding the protective order, the magistrate judge stated, "Frankly, anything that comes out of that lawyer's

mouth is legal advice," explained that her position was that "anything that's communicated from or to [c]ounsel is privileged and [Bower] cannot discuss that in any manner," and said to counsel, "I'm telling you that if it's communications from or to an attorney, it's privileged." The magistrate judge also approved BDO's contention that "the default position should be that if the conversation is with an attorney, a lawyer who has an ethical responsibility, should not invade that privilege" and rejected the EEOC's assertion that "it's not legal advice when [Bower is] being told to do things that are not ethical, that are not within the bounds of her position." These statements support the EEOC's claim that the magistrate judge granted and determined the scope of the protective order based on an erroneous interpretation of the law.

We do not, however, hold that a protective order is unwarranted, and we leave the decision whether to grant such an order to the trial court.

### 3. Conclusion

Because the magistrate judge's incorrect application of the legal standard may have affected both her analysis of the allegedly disclosed communications and the breadth of the protections she imposed in her order, we remand so that BDO's request for protection may be considered under the proper legal standard for determining privilege.

### III. CONCLUSION

For the foregoing reasons, we VACATE the district court's judgment and REMAND for a determination consistent with this opinion.