EASTERN DISTRICT OF LOUISIANA 
ELIAS JORGE “GEORGE” CIVIL ACTION 
ICTECH-BENDECK, 
 Plaintiff 
VERSUS NO. 18-7889 
 c/w 18-8071, 
 18-8218, 18-9312 
WASTE CONNECTIONS SECTION: “E” (5) 
BAYOU, INC., ET AL., 
 Defendants 
Related Case: 
FREDERICK ADDISON, ET AL., CIVIL ACTION 
 Plaintiffs 
VERSUS NO. 19-11133 
 c/w 19-14512 
LOUISIANA REGIONAL SECTION: “E” (5) 
LANDFILL COMPANY, ET AL., 
 Defendants 
Applies to: All Cases 
 ORDER AND REASONS 
 Before the Court are two contested discovery motions: Plaintiffs’ Motion to Compel 
Discovery Against the Waste Connections Defendants (hereinafter “Motion to Compel”)1 
and a Motion to Quash the Addison Plaintiffs’ Subpoena to SCS Engineers (hereinafter 
“Motion to Quash”) filed by Defendants Waste Connections Bayou, Inc., Waste 
Connections US, Inc., and Louisiana Regional Landfill Company (collectively the “Waste 
1 R. Doc. 326 (18-7889); R. Doc. 380 (19-11133). Defendants opposed. R. Doc. 329 (18-7889); R. Doc. 383 
(19-11133). Plaintiffs replied. R. Doc. 389 (19-11133). Plaintiffs filed a supplemental memorandum. R. Doc. 
393 (19-11133). Defendants filed a supplemental reply. R. Doc. 394 (19-11133). 
these contested motions relate to documents involving Stearns, Conrad & Schmidt, 
Consulting Engineers, Inc. (“SCS Engineers”),3 which are categorized into nine 
“Categories of Work” as identified in Attachment A to the Court’s Order and Reasons 
issued on January 12, 2024.4 This Order concerns certain documents related to Category 
#1, the Leachate Collection System Pump Evaluation Report for the Jefferson Parish 
Landfill, dated November 2018 (the “Pump Evaluation Report”). 
 BACKGROUND 
 This case concerns the operation of the Jefferson Parish Landfill (the “Landfill”) 
and the resulting odors emitted from the Landfill between July 1, 2017, and December 31, 
2019. The Court’s Order and Reasons issued on January 2, 2024 presents background 
relevant to the discovery motions.5 

 LEGAL STANDARD 
 “Parties may obtain discovery regarding any nonprivileged matter that is relevant 
to any party’s claim or defense and proportional to the needs of the case.”6 “Information 
within the scope of discovery need not be admissible in evidence to be discovered.”7 At 
the discovery stage, relevant evidence includes “[a]ny matter that bears on, or that 
reasonably could lead to other matters that could bear on, any issue that is or may be in 

2 R. Doc. 368 (19-11133). Plaintiffs filed a Motion to Enforce Subpoena, which the Court construes as an 
opposition to the Motion to Quash. R. Doc. 381 (19-11133). Defendants filed a Reply Memorandum in 
Support of Their Motion to Quash. R. Doc. 388 (19-11133). See also Subpoena to Produce Documents Issued 
to SCS Engineers, R. Doc. 381-5 (19-11133). 
3 See Requests for Production 58-66, Addison Plaintiffs’ Second Set of Requests for Production of 
Documents to the Waste Connections Defendants, R. Doc. 329-2 at 8, 12 (18-7889). 
4 See R. Doc. 406-1 (18-7889); R. Doc. 483-1 (19-11133). Attachment A is based on Attachment A to the 
Letter from Megan R. Brillault, Counsel for the Waste Connections Defendants, to the Court (Dec. 1, 2023). 
The “Chart Showing Status of Production” attached to the December 1, 2023 Letter contained comments 
from both the Waste Connections Defendants and Plaintiffs. The Court assigned numbers to the Categories 
of Work for ease of reference. 
5 R. Doc. 397 (18-7889); R. Doc. 468 (19-11133). 
6 FED. R. CIV. PRO. 26(b); see also Miller v. Sam Houston Univ., 986 F.3d 880, 891 (5th Cir. 2021). 
7 Id. 
Federal Rules of Civil Procedure] is lower than at the trial stage” under Federal Rule of 
Evidence 401.9 Discovery should be allowed unless the party opposing discovery 
establishes that the information sought “can have no possible bearing on the claim or 
defense of the party seeking discovery.”10 If relevance is in doubt, the court should be 
permissive in allowing discovery.11 This broad scope is necessary given the nature of 
litigation, where determinations of discoverability are made well in advance of trial.12 
Likewise, “broad discretion is afforded to the district court when deciding discovery 
matters,”13 and the Court must determine the scope of discovery “in light of the relevant 
facts of the particular case.”14 
 While the discovery rules are accorded broad and liberal treatment to achieve their 
purpose of adequately informing litigants in civil trials,15 discovery does have “‘ultimate 

and necessary boundaries.’”16 Rule 26(b)(2)(C) mandates that the Court limit the 
frequency or extent of discovery otherwise allowed, if it determines: “(i) the discovery 
sought is unreasonably cumulative or duplicative, or can be obtained from some other 
source that is more convenient, less burdensome, or less expensive; (ii) the party seeking 
discovery has had ample opportunity to obtain the information by discovery in the action; 

8 Stevenson v. Benjamin, 2022 WL 12309062, *1 (5th Cir. 10/21/2022) (quoting Coughlin v. Lee, 946 F.2d 
1152, 1159 (5th Cir. 1991)); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 350-51 (1978); Rangel v. 
Gonzalez Mascorro, 274 F.R.D. 585, 590 (S.D. Tex. 4/11/2011). 
9 Id. 
10 Dotson v. Edmonson, 2017 WL 11535244, at *2 (E.D. La. 11/21/2017) (citing Merrill v. Waffle House, 
Inc., 227 F.R.D. 467, 470 (N.D. Tex. 2/4/2005)). 
11 E.E.O.C. v. Simply Storage Mgmt., L.L.C., 270 F.R.D. 430, 433 (S.D. Ind. 5/11/2010) (quoting Truswal 
Sys. Corp. v. Hydro–Air Eng'g, Inc., 813 F.2d 1207, 1212 (Fed. Cir. 1987)). 
12 Rangel, 274 F.R.D. at 590 n.5. 
13 Miller, 986 F.3d at 891 (citing Crosby v. la. Health Serv. & Indemnity Co., 647 F.3d 258, 261 (5th Cir. 
2011)). 
14 See Conboy v. Edward D. Jones & Co., 140 F. App’x 510, 517 (5th Cir. 2005). 
15 Herbert v. Lando, 441 U.S. 153, 176 (1979) (citations omitted). 
16 Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (quoting Hickman v. Taylor, 329 U.S. 495, 
507 (1947)). 
“has never been a license to engage in an unwieldy, burdensome, and speculative fishing 
expedition.”18 While relevancy in the discovery context is broader than in the trial context, 
that legal tenet should not be misapplied to allow fishing expeditions in discovery.19 
 “The party filing the motion to compel bears the burden of showing that the 
materials and information sought are relevant to the action or will lead to the discovery 
of admissible evidence.”20 “Once the moving party establishes that the materials 
requested are within the scope of permissible discovery, the burden shifts to the party 
resisting discovery to show why the discovery is irrelevant, overly broad or unduly 
burdensome or oppressive, and thus should not be permitted.”21 “[T]he party asserting a 
privilege exemption from discovery . . . bears the burden of demonstrating the 
applicability of that privilege.”22 “Blanket assertions of privilege” are insufficient to carry 

a party’s burden.23 
 LAW AND ANALYSIS 
 In their motion, Plaintiffs seek to compel discovery of hundreds of documents.24 
After discussions with the parties, the Court categorized documents pertaining to the 
outstanding discovery requests into nine categories. This Order and Reasons addresses 
discovery issues involving documents related to Category #1. Defendants claim the 
relevant documents in the Privilege Logs they provided to the Court are properly withheld 

17 FED. R. CIV. PRO. 26(b)(2)(C)(i)–(iii). 
18 Crosby v. La. Health Serv. & Indem. Co., 647 F.3d 258, 264 (5th Cir. 2011). 
19 Trident Mgmt. Grp., LLC v. GLF Constr. Corp., No. 16-17277, 2017 WL 3011144, at *4 (E.D. La. 
7/14/2017) (citations omitted); see also Crosby, 647 F.3d at 264; Ganpat v. E. Pac. Shipping, PTE, Ltd., 
No. 18-13556, 2020 WL 1046336, at *3 (E.D. La. 3/4/2020) (Morgan, J.). 
20 Summers v. Louisiana, 2021 WL 4392309, *3 (M.D. La. 9/24/2021) (internal quotations and citations 
omitted). 
21 Id. 
22 Zahid Hotel Group, L.L.C. v. AmGUARD Insurance Co., 22-2792, 2023 WL 4353132, at *2 (E.D. La. July 
5, 2023). 
23 United States v. Davis, 636 F.2d 1028, 1044 n.20 (5th Cir. 1981). 
24 R. Doc. 326 (18-7889); R. Doc. 380 (19-11133). 
work product protection, and/or attorney-client privilege.25 The Court addresses the 
arguments in turn. 
 I. The Work Product Doctrine and Consulting Expert Work Product 
 Privilege 
 The Waste Connections Defendants argue the following documents in the privilege 
log produced on November 13, 2023 (the “November 13 Privilege Log”), which relate to 
Category #1, are privileged based on the work product doctrine and consulting expert 
work product privilege: Entries 0483, 0488, 0489, 0490, 0498, 0499, 0500, 0502, 0503, 
0504, 0505, 0506, 0507, 0508, 0509, 0510, 0511, 0512, 0513, and 0514. Defendants 
further argue the following documents in the privilege log produced on December 4, 2023 
(the “December 4 Privilege Log”), which relate to Category #1, are privileged based on the 
work product doctrine and consulting expert work product privilege: Entries 0001, 0002, 
0003, 0004, 0005, 0006, 0009, 0015, 0017, 0018, 0019, 0020, 0021, 0022, 0023, 0029, 
0031, 0032, 0033, 0034, 0035, 0036, 0037, 0041, 0043, 0045, 0049, 0051, 0072, 0073, 
0074, 0075, 0092, 0093, 0095, 0099, 0103, 0104, 0105, 0106, 0107, 0108, 0109, 0119, 
0120, 0124, 0127, 0128, 0129, 0132, 0146, 0167, 0168, 0169, 0170, 0171, 0172, 0173, 0174, 
0175, 0176, 0177, 0178, 0179, 0180, 0181, 0191, 0193, 0194, 0195, 0196, 0197, 0198, 0199, 

0202, 0207, 0937, 0938, 0939, 0940, 0952, 0953, and 0954. 
 “Federal law governs . . . parties’ assertions that certain information is protected 
from disclosure by the work product doctrine.”26 “The work product doctrine is not an 
umbrella that shades all materials prepared by a lawyer. The work product doctrine 
focuses only on materials assembled and brought into being in anticipation of 

25 R. Doc. 386 (18-7889); R. Doc. 438 (19-11133). 
26 Southern Scrap Material Co. v. Fleming, 2003 WL 21474516, at *5 (E.D. La. June 18, 2003) (citing 
Naquin v. Unocal Corp., 2002 WL 1837838, at *2 (E.D. La. 2002)). 
are prepared in anticipation of litigation or for trial by or for another party or its 
representative.”28 “Excluded from the work-product doctrine are materials assembled in 
the ordinary course of business.”29 The doctrine does not place work product outside the 
scope of discovery, but instead “creates a form of qualified immunity from discovery” for 
materials prepared in anticipation of litigation.30 “Rule 26(b)(3) protects documents 
prepared by a party’s agent from discovery, as long as they were prepared in anticipation 
of litigation.”31 
 The level of protection depends on whether the materials prepared in anticipation 
of litigation constitute “opinion” work product or non-opinion, “fact” work product.32 The 
“mental impressions, conclusions, opinions or legal theories of an attorney” are opinion 
work product subject to a higher showing for production.33 “Fact work product, on the 

other hand, is any material ‘prepared in anticipation of litigation or for trial by or for 
another party or its representative’ under Rule 26(b)(3)(A) but ‘not the “mental 
impressions, conclusions, opinions or legal theories of an attorney”’ under subsection 
(b)(3)(B).”34 A party seeking discovery of ordinary fact work product must make a 
showing of “substantial need and the inability to obtain the substantial equivalent 
elsewhere.”35 “However, absent a showing of compelling need and the inability to discover 

27 United States v. El Paso Co., 682 F.2d 530, 542 (5th Cir. 1982). 
28 FED. R. CIV. P. 26(b)(3)(A). 
29 Treece v. Perrier Condominium Owners Ass’n, Inc., 2019 WL 12289568, at *4 (E.D. La. Jun 20, 2019); 
see also Hill Tower, Inc. v. Dep’t of Navy, 718 F. Supp. 562, 565 (N.D. Tex. 1988) (“The mere fact this 
report deals with facts, opinions, and recommendations that later may be the focus of litigation does not 
establish that there was the expectation of litigation when this document was drafted.”). 
30 Chiasson v. Zapata Gulf Marine Corp., 988 F.2d 513, 514 n.2 (5th Cir. 1993). 
31 Southern Scrap Material, 2003 WL 21474516, at *6. 
32 Id. at *7. 
33 In re Int’l Sys. & Controls Corp. Sec. Lit., 693 F.2d 1235, 1240 (5th Cir. 1982). 
34 See Doe 1 v. Baylor Univ., 335 F.R.D. 476, 487 (W.D. Tex. 2020). 
35 Southern Scrap Material, 2003 WL 21474516, at *7, 13. 
of counsel, conclusions, opinions and legal theories of an attorney are not discoverable.”36 
 Under Rule 26(b)(4)(D), a party may discover “facts known or opinions held” by a 
non-testifying expert retained “in anticipation of litigation . . ., only upon showing of 
exceptional circumstances under which it is impracticable for the party seeking discovery 
to obtain facts or opinions on the same subject by other means.”37 The rule “creates a safe 
harbor whereby facts and opinions of nontestifying, consulting experts are shielded from 
discovery, except upon a showing of exceptional circumstances.”38 
 Plaintiffs argue SCS prepared the Pump Evaluation Report in the ordinary course 
of business with Waste Connections rather than in anticipation of litigation at the 
direction of counsel.39 Specifically, Plaintiffs contend SCS performed the work related to 
Category #1 between July 25 and 27, 2018 at the direction of Waste Connections employee 

Brett O’Connor pursuant to its Master Services Agreement with Waste Connections.40 
Plaintiffs note “SCS had been asked to perform the work [related to Category #1], and had 
completed the work, before its outside counsel was even hired, pursuant to the same 
Master Services Agreement that governed construction and engineering work done for 
Waste Connections by SCS across the country.”41 
 Defendants argue “the subject matter and timing of SCS’s reports for Waste 
Connections’ attorneys demonstrate that the primary motivating purpose behind the 
reports was to assist with Waste Connections’ legal defense,” citing SCS’s late July field 
inspection in preparation of the Pump Evaluation Report, which was conducted “just one 

36 Id. at *7. 
37 FED. R. CIV. PRO. 26(b)(4)(D). 
38 Will Uptown, LLC v. B&P Restaurant Group, LLC, 15-51, 2016 WL 4620200, at *5 (M.D. La. Sept. 6, 
2016). 
39 R. Doc. 381-1, p. 4 (19-11133). 
40 Id. 
41 R. Doc. 385, pp. 4-5 (18-7889). 
administrative compliance order alleging leachate system violations at the [Landfill].”42 
Defendants, however, concede “SCS was retained for its work on the gas collection system 
and leachate tie-in projects separately from its assistance with [counsel’s] defense of 
Waste Connections in the litigation” and further admit defense counsel “was not involved 
in these projects.”43 
 The Court finds SCS’s work related to Category #1, which was conducted prior to 
its official agreement with counsel for the Waste Connections Defendants, was performed 
“in the ordinary course of business” for Waste Connections rather than in anticipation of 
litigation.44 Having conducted in camera review of documents related to Category #1 for 
which Defendants assert work product and consulting expert work product privilege, the 
Court finds counsel’s assertion that the investigation underlying the Pump Evaluation 

Report was performed in anticipation of litigation is a post hoc justification unsupported 
by documents and communications. One document (WC_JPLF_SCS_PRIV_0009) 
demonstrates that on August 28, 2019, defense counsel declared “[w]e would like to use 
SCS as a consulting expert, as opposed to a testifying expert - particularly because SCS 
has already done some work that we intend to use in a consulting fashion (i.e. want to 
keep it protected).” It was not until September 5, 2018 that SCS and counsel for the Waste 
Connections Defendants executed the contractor agreement, in which defense counsel 
formally retained SCS as an expert. The Court finds certain documents, concerning work 
conducted by SCS prior to September 5, 2018 are not protected by the work product 

42 R. Doc. 388, p. 7 (19-11133). 
43 R. Doc. 368-1, p. 6 (19-11133). Waste Connections Defendants explain that that SCS was first 
contracted by the Landfill in 2014 to install a gas collection system in Phase B, which was completed prior 
to the commencement of this litigation, and was contracted by the Waste Connections Defendants in 
2018 to tie in the leachate piping to the gas collection system in Phase 4A. 
44 See Treece, 2019 WL 12289568, at *4. 
the Court denies Defendants’ claims of privilege based on work product and consulting 
expert work product protection with respect to the following documents: 
  Entries 0483, 0488, and 0490 in the November 13 Privilege Log; and 
  Entries 0001, 0001_001, 0002, 0002_001, 0003, 0004_001, 0006, 0009, 0049,
 and 0197 in the December 4 Privilege Log. 
 Having conducted in camera review, the Court finds certain documents related to
Category #1 dated on or after September 5, 2018 constitute “fact” work product, which 
contain no “mental impressions, conclusions, opinions or legal theories of an attorney.”46 
Plaintiffs have demonstrated the requisite “substantial need” and “inability to obtain the 
substantial equivalent elsewhere,”47 and “exceptional circumstances” that hinder their 

ability to obtain facts on the same subject matter by other means to render these 
documents discoverable.48 Further, to the extent these documents contain opinion work 
product, Plaintiffs demonstrate the requisite “compelling need and inability to discovery 
the substantial equivalent by other means.”49 Accordingly, the Court denies Defendants’ 
claims of privilege based on work product and consulting expert work product protection 
with respect to the following documents: 
  Entries 499 and 500 in the November 13 Privilege Log; and 
  Entries 0072, 0073, 0073_001, 0073_002, 0095, 0095_001, 0099, 0103,
 0103_001, 0104, 0105, 0105_001, 0105_002, 0105_003, 0106, 0106_001, 0107,
 0107_001, 0108, 0109, 0109_001, 0109_003, 0119, 0120, 0124, 0124_001,

45 See id. 
46 See In re Int’l Sys. & Controls Corp. Sec. Lit., 693 F.2d at 1240. 
47 See Southern Scrap Material, 2003 WL 21474516, at *7, 13. 
48 FED. R. CIV. PRO. 26(b)(4)(D). 
49 See id. at *7. 
 0132_005, 0132_007, 0132_009, 0132_011, 0132_013, 0146_002, 0146_003, 
 0146_004, 0168, 0169, 0171, 0173, 0174, 0176, 0176_003, 0176_004, and 0938 in 
 the December 4 Privilege Log. 
 II. The Attorney-Client Privilege 
 Defendants argue that the following documents in the November 13 Privilege Log, 
which relate to Category #1, are privileged attorney-client communications: Entries 0483, 
0488, 0489, 0490, 0498, 0499, 0502, 0503, 0504, 0505, 0506, 0507, 0508, 0509, 0510, 
0511, 0512, 0513, and 0514. Defendants further argue that the following documents in the 
December 4, 2023 Privilege Log, which relate to Category #1, are privileged attorney-
client communications: Entries 0005, 0006, 0009, 0019, 0020, 0021, 0022, 0023, 0029, 
0031, 0032, 0033, 0034, 0035, 0036, 0037, 0041, 0043, 0051, 0074, 0075, 0093, 0124, 

0170, 0175, 0177, 0178, 0180, 0181, 0193, 0194, 0195, 0196, 0197, 0198, 0199, and 0207 
in the December 4 Privilege Log. 
 The work-product doctrine is distinct from and broader than the attorney-client 
privilege.50 “[T]he work product privilege [exists] . . . to promote the adversary system by 
safeguarding the fruits of an attorney’s trial preparations from the discovery attempts of 
an opponent,” whereas “[t]he attorney-client privilege exists to protect confidential 
communications and to protect the attorney-client relationship.” 51 
 “The attorney-client privilege protects two related, but different communications: 
(1) confidential communications made by a client to his lawyer for the purpose of
obtaining legal advice; and (2) any communication from an attorney to his client when 
made in the course of giving legal advice, whether or not that advice is based on privileged 

50 See United States v. Nobles, 422 U.S. 225, 238 (1975). 
51 Shields v. Sturm, Ruger, & Co., 864 F.2d 379, 382 (5th Cir. 1989). 
‘encourage full and frank communication between attorneys and their clients and thereby 
promote broader public interests in the observance of law and administration of 
justice.”53 “For a communication to be protected under the privilege, the proponent ‘must 
prove: (1) that . . . a confidential communication [was made]; (2) to a lawyer or his 
subordinate, (3) for the primary purpose of securing either a legal opinion or legal 
services, or assistance in some legal proceeding.’”54 “Communications by the lawyer to the 
client are protected ‘if they would tend to disclose the client’s confidential 
communications.’”55 “Because the attorney-client privilege ‘has the effect of withholding 
relevant information from the fact-finder,’ it is interpreted narrowly so as to ‘apply only 
where necessary to achieve its purpose.’”56 “Further, ‘the privilege only protects disclosure 
of communications; it does not protect disclosure of the underlying facts by those who 

communicated with the attorney.’”57 
 “Application of the attorney-client privilege is a ‘question of fact, to be determined 
in the light of the purpose of the privilege and guided by judicial precedents.’”58 
“Determining the applicability of the privilege is a 'highly fact-specific’ inquiry, and the 
party asserting the privilege bears the burden of proof.’”59 “‘Attorney-client privilege is 

52 Earl v. Boeing Co., 2021 WL 963405, at *2 (E.D. Tex. Mar. 15, 2021) (quoting United States v. Mobil 
Corp., No. 4:19-cv-507, 149 F.R.D. 533, 536 (N.D. Tex. 1993)) (vacated in part, on other grounds, by In re 
Boeing Co., No. 21-40190, 2021 WL 3233504 (5th Cir. July 29, 2021)). 
53 Id. (quoting Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)). 
54 Id. (quoting EEOC v. BDO USA, L.L.P., 876 F.3d 690, 695 (5th Cir. 2017)). 
55 Id. (quoting O’Malley v. Pub. Belt R.R. Comm’n for City of New Orleans, No. 17-4812, 2018 WL 814190, 
at *2 (E.D. La. Feb. 9, 2018)). 
56 Id. (quoting BDO USA, 876 F.3d at 695). 
57 Id. (quoting Upjohn, 449 U.S. at 395). 
58 Id. at *3 (quoting In re Auclair, 961 F.3d 65, 68 (5th Cir. 1992)). 
59 Id. (quoting BDO USA, 986 F.3d at 695). 
been met are construed against the proponent.’”61 
 When a corporate setting is involved, courts have recognized the attorney-client 
privilege analysis “presents unique challenges.”62 In Stoffels v. SBC Communications, 
Inc., the United States District Court for the Western District of Texas stated: 
 The attorney-client privilege applies in a corporate setting. However, 
 because in-house counsel has an increased level of participation in the day-
 to-day operations of the corporation, it is more difficult to define the scope 
 of the privilege when a communication is made to in-house counsel. Thus, 
 in such a setting, the attorney-client privilege attaches only to 
 communications made for the purpose of giving or obtaining legal advice or 
 services, not business or technical advice or management decisions. The 
 critical inquiry is, therefore, whether any particular communication 
 facilitated the rendition of predominantly legal advice or services to the 
 client.63 
“Even though this standard is ‘time-consuming’ and ‘requires a document-by-document 
analysis,’ it ‘ensures a balance between forbidding a company from trying to cloak non-
privileged communications with protection by unnecessarily sending them to attorneys 
and encouraging in-house counsel involvement early and often in corporate decision-
making.’”64 
 “Legal advice, as contrasted with business advice, ‘involves the interpretation and 
application of legal principles to guide future conduct or to assess past conduct.’”65 “If 
advice offered by in-house counsel intertwines business and legal advice, attorney-client 
privilege protects the communication only if the legal advice predominates.”66 “Simply 
labeling communications as ‘legal advice’ is conclusory and insufficient to satisfy the 
60 Id. (quoting United States v. Tedder, 801 F.2d 1437, 1441 (4th Cir. 1986)). 
61 Id. (quoting BDO USA, 986 F.3d at 695). 
62 Id. at *4. 
63 Id. (quoting Stoffels v. SBC Comms., Inc., 263 F.R.D. 406, 411 (W.D. Tex. 2009)). 
64 Id. at *3 n.3 (quoting Corporate Attorney-Client Privilege in the Digital Age: War on Two Fronts?, 16 
STAN. J. L. BUS. & FIN. 288, 307 (2011)). 
65 Id. (quoting BDO USA, 856 F.3d at 365). 
66 Id. (quoting Neuder v. Battelle Pac. Nw. Lab., 194 F.R.D. 289, 292 (D.D.C. 2000)). 
communications to both lawyers and non-lawyers, . . . ‘it usually cannot claim that the 
primary purpose of the communication was for legal advice or assistance because the 
communication served both business and legal purposes.’”68 
 Plaintiffs point to several documents that demonstrate Waste Connections’ intent 
to distribute the Pump Evaluation Report to Jefferson Parish and neighboring landfill, 
River Birch, which suggest the Waste Connections Defendants did not hire SCS to advise 
defense counsel on a confidential basis.69 Having conducted in camera review, the Court 
agrees, and finds in the Plaintiffs’ favor with respect to certain documents related to 
Category #1. “[T]he attorney-client privilege does not apply to every communication 
involving counsel,” but only those “communications made in confidence between a client 
and his lawyer for the purpose of obtaining legal advice.”70 Defendants have not met the 

burden of demonstrating that the primary purpose of the following documents was to 
obtain advice on specified legal issues as required for attorney-client privilege to attach:71 
  Entry 0483, 0488, 0490, and 0499 in the November 13 Privilege Log; and
  Entries 0006, 0009, 0051, 0124, 0124_001, and 0197 in the December 4 Privilege
 Log. 
 Defendants’ assertions of work product, consulting expert work product, and
attorney-client privileges on the remaining documents related to Category #1 are proper. 
Accordingly, Defendants are not required to produce them to Plaintiffs. 

67 Id. (citing Coltec Indus., Inc. v. Am. Motorists Ins. Co., 197 F.R.D. 368, 373 (N.D. Ill. 2000)). 
68 Slocum v. Int’l Paper Co., 549 F. Supp. 3d 519, 524 (E.D. La. 2021) (quoting In re Vioxx Prod. Liability 
Lit., 501 F. Supp. 2d 789, 805 (E.D. La. 2007)). 
69 R. Doc. 381-1, p. 4 (19-11133). 
70 Tonti Management Co., Inc. v. Soggy Doggie, LLC, 2020 WL 9172077, at *9 (E.D. La. June 25, 2020). 
71 See id. 
 CONCLUSION 
 For the foregoing reasons, it is ORDERED that Plaintiffs’ Motion to Compel is 
GRANTED IN PART and DEFERRED IN PART” as stated herein. 
 IT IS FURTHER ORDERED that Defendants’ Motion to Quash is DENIED IN 
PART and DEFERRED IN PART.73 
 IT IS FURTHER ORDERED that the Waste Connections Defendants produce 
the following documents in full, without redactions, by January 24, 2024: 
 e Entries 0483, 0488, 0490, 0499, and 0500 in the November 13 Privilege Log. 
 e Entries 0001, 0001_001, 0002, 0002_001, 0003, 0004_001, 0006, 0009, 0049, 
 0051, 0072, 0073, 0073 001, 0073 002, 0095, 0095_001, 0099, 0103, 
 0103001, 0104, 0105, 0105_001, 0105_002, 0105__003, 0106, 0106_001, 0107, 
 0107_001, 0108, 0109, 0109_001, 0109_003, 0119, 0120, 0124, 0124_001, 
 0127_001, 0127_002, 0128 001, 0128 002, 0129_001, 0132, 0132_003, 
 0132_005, 0132_007, 0132_009, 0132_011, 0132_013, 0146_002, 0146_003, 
 0146_004, 0168, 0169, 0171, 0173, 0174, 0176, 0176_003, 0176 004, 0197, and 
 0938 in the December 4 Privilege Log. 
 New Orleans, Louisiana, this 23rd day of January, 2024. 

 SUSIE rongan 
 UNITED STATES DISTRICT JUDGE 

72 R, Doc. 326 (18-7889); R. Doc. 380 (19-11133). The Court has ruled on the relevant documents related to 
Category #1 only in this Order. The Court defers ruling on the remaining issues raised in Plaintiffs’ motion 
to compel at this time. 
73 R, Doc. 368 (19-11133). 
 14